### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>SHERRY ANN MCGANN,<br><br>Debtor. | Bankruptcy Case No. 20-18118 TBM<br>Chapter 7 |
| SHERRY ANN MCGANN,<br><br>Plaintiffs,<br><br>v.<br><br>ELIZABETH GERMAN,<br><br>Defendant. | Adv. Pro. No. 25-1199 TBM |

## ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS

### I.    Introduction.

In 2019, Sherry Ann McGann (the "Debtor"), acting through her legal counsel, Elizabeth German ("Ms. German"), filed for protection under Chapter 11 of the Bankruptcy Code[1] thereby initiating the case captioned: *In re McGann*, Case No. 19-18971 (Bankr. D. Colo.) (the "Chapter 11 Case"). Ms. German represented the Debtor throughout the entire Chapter 11 Case. A creditor requested dismissal of the Chapter 11 Case. The Debtor did not oppose dismissal. Accordingly, the Court dismissed the Chapter 11 Case about a year after it was filed. In late 2020, about three months after such dismissal, the Debtor (again represented by Ms. German) filed a new bankruptcy proceeding seeking liquidation under Chapter 7 of the Bankruptcy Code in the case captioned:  *In re McGann*, Case No. 20-18118 (Bankr. D. Colo.) (the "Chapter 7 Case"). Jeanne Y. Jagow was appointed as the Chapter 7 Trustee (the "Trustee") to liquidate the Debtor's estate. Ms. German represented the Debtor for the first thirteen months of the Chapter 7 Case. Ms. German sought authorization to withdraw as the Debtor's attorney. The Debtor did not oppose her departure. So, the Court authorized Ms. German to withdraw from representing the Debtor.

---

[1]    All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

Meanwhile, the Debtor has become extremely displeased with the progression of her Chapter 7 Case, including the Trustee's liquidation of real property owned by the bankruptcy estate.   Most recently, the Debtor initiated this Adversary Proceeding against her former lawyer Ms. German: *Celestial Properties LLC et al. v. German et al. (In re McGann)*, Adv. Pro. No. 25-1199 (Bankr. D. Colo.).  In her Complaint, the Debtor accused Ms. German of legal malpractice and other malfeasance in connection with both the Chapter 11 Case and the Chapter 7 Case.

Ms. German responded by filing a Motion to Dismiss, seeking dismissal of all causes of action against her under Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012.  The Debtor opposed dismissal.  For the reasons set forth below, the Court determines that the Debtor has alleged sufficient facts to state a claim against Ms. German for legal malpractice based on negligence.  However, the Court also decides that the Debtor's claim for legal malpractice based on breach of fiduciary duty and the Debtor's claim for aiding and abetting breach of fiduciary duty must be dismissed.  The Court, therefore, grants, in part, and denies, in part the Motion to Dismiss.

## II.      Jurisdiction and Venue.

This Court has jurisdiction to adjudicate the Motion to Dismiss presented in this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b).[2]  The dismissal contest is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate) and (b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship).  Neither the Debtor nor Ms. German has contested the Court's jurisdiction to adjudicate the Motion to Dismiss. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.      Procedural Background

### A.      The Debtor's Bankruptcy Cases.[3]

#### 1.      The Debtor's Chapter 11 Bankruptcy Case.

The Debtor, acting through legal counsel, Ms. German, filed her voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on October 17, 2019, commencing the Chapter 11 Case: *In re McGann*, Case No. 19-18971 (Bankr. D.

---

[2]      The Debtor's Complaint is predicated on Colorado state law.  However, the Debtor has not complied with COLO. REV. STAT. § 13-20-602 *et seq.* which requires a party asserting legal malpractice to submit a certificate of review.  Nevertheless, the requirements of COLO. REV. STAT. § 13-20-602 *et seq.* are not jurisdictional.  *Miller v. Rowtech, LLC*, 3 P.3d 492, 495 (Colo. App. 2000).

[3]      The Court takes judicial notice of the dockets of the Chapter 11 Case and Chapter 7 Case for purposes of describing the current procedural status.  *See St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket).

Colo.).[4]  Ms. German represented the Debtor during the entire Chapter 11 Case.  The Debtor failed to file a reorganization plan.  A creditor requested dismissal under Section 1112(b).[5]  The Debtor did not oppose such relief.[6]  After the Chapter 11 Case had been pending almost a year, on September 1, 2020, the Court entered an Order dismissing the Chapter 11 Case.[7]  The Court closed the Chapter 11 Case on November 3, 2020.[8]

### 2.     The Debtor's Chapter 7 Bankruptcy Case.

A few months later, on December 22, 2020, the Debtor (again with Ms. German's assistance) filed a new voluntary Petition for relief under Chapter 7 of the Bankruptcy Code commencing the Chapter 7 Case:  *In re McGann*, Bankr. Case No. 20-18118 (Bankr. D. Colo.).[9]  Jeanne Y. Jagow was appointed as the Chapter 7 Trustee for the liquidation of the Plaintiff's bankruptcy estate.[10]  A few months after the bankruptcy filing, on March 21, 2021, the Court entered an "Order of Discharge" in the Chapter 7 Case, discharging the Debtor's dischargeable debts.[11]

Ms. German represented the Debtor for the first 13 months of the Chapter 7 Case.  On January 24, 2022, Ms. German filed a "Motion to Withdraw with Notice."[12] Ms. German cited "a fundamental disagreement on how to proceed with this case."[13] The Debtor did not oppose Ms. German's withdrawal.  Accordingly, on February 7, 2022, the Court entered an Order authorizing Ms. German to withdraw as legal counsel for the Debtor in the Chapter 11 Case.[14]  Since such time, the Debtor has proceeded without Court-approved legal counsel in the Chapter 7 Case.  The Chapter 7 Case is pending and has been the subject of extensive litigation.

### B.     This Adversary Proceeding.

### 1.     The Complaint.

On July 17, 2025, acting *pro se*, the Debtor individually, and purportedly on behalf of Celestial Properties, LLC ("Celestial Properties"), filed a "Complaint for Damages, Equitable Relief, an Declaratory Release of Estate Interests" (the

---

[4]     Chapter 11 Case Docket No. 1.  The Court uses the convention "Chapter 11 Case Docket No. ___" to refer to documents filed in the CM/ECF system in the Chapter 11 Case: *In re McGann*, Bankr. Case No. 19-18971 (Bankr. D. Colo.).

[5]     Chapter 11 Case Docket No. 170.

[6]     Chapter 11 Case Docket No. 173.

[7]     Chapter 11 Case Docket No. 176

[8]     Chapter 7 Case Docket No. 185.

[9]     Chapter 7 Case Docket No. 1.  The Court uses the convention "Chapter 7 Case Docket No. ___ " to refer to documents filed in the CM/ECF system in the Chapter 7 Case: *In re McGann*, Bankr. Case No. 20-18118 (Bankr. D. Colo.).

[10]    Chapter 7 Case Docket No. 5.

[11]    Chapter 7 Case Docket No. 63.

[12]    Chapter 7 Case Docket No. 119.

[13]    *Id.* at 1.

[14]    Chapter 7 Case Docket No. 134.

"Complaint").[15]  In the Complaint, the Debtor listed the plaintiffs as: (1) "Celestial Properties, a Colorado limited liability company, by and through its sole member Sherry Ann McGann"; and (2) "Sherry A. McGann, individually."[16]  Further, she identified the defendants as: (1) "Elizabeth German, Esq."; (2) "Jeanne Y. Jagow"; and (3) "David Miller" ("Mr. Miller").[17]  In the Complaint, the Debtor characterized her claims for relief as:

(1)     "Legal Malpractice/Breach of Fiduciary Duty" (the "First Claim"), against Ms. German;

(2)     "Breach of Fiduciary Duty" (the "Second Claim"), against the Trustee and Mr. Miller;

(3)     "Declaratory Relief – Abandonment of Celestial Properties LLC and Improper Retention of Estate Claims" (the "Third Claim"), presumably against the Trustee; and

(4)     "Aiding and Abetting Breach of Fiduciary Duty" (the "Fourth Claim") against Mr. Miller and Ms. German.[18]

On July 18, 2025, the Court issued an "Order for Compliance" (the "Order for Compliance"[19] in which it noted that Celestial Properties, as a corporate entity, had to be represented by legal counsel under L.B.R. 9010-1(e) and established a deadline for Celestial Properties to retain legal counsel to represent it in its prosecution of the Complaint, failing which the Court would dismiss Celestial Properties as a plaintiff.

On July 18, 2025, the Debtor filed a "Motion Requesting Entry of Order Authorizing Sherry McGann to Retain Counsel on Behalf of Celestial Properties, LLC, and Act on Behalf of Celestial Properties, LLC" (the "Motion for Authority")[20] in which she asserted that Celestial Properties has been "administratively abandoned" and requested authority to act on its behalf.  Thereafter, on July 31, 2025, the Debtor filed a "Motion for Extension of Time to Comply with Order at Doc. #6 Pending Ruling on Doc. #9" (the "Motion for Extension")[21] requesting that the Court give Celestial Properties an extension of time to comply with the Order for Compliance until such time that the Court ruled on the Motion for Authority.

---

[15]     Docket No. 1.  The Court uses the convention "Docket No. __" to refer to documents filed in the CM/ECF system in this Adversary Proceeding:  *Celestial Properties LLC et al. v. Elizabeth German, Esq. et al. (In re McGann),* Adv. Pro. No. 25-1199 (Bankr. D. Colo.)
[16]     *Id.* at 1.
[17]     *Id.*
[18]     *Id.* at 8-9.
[19]     Docket No. 6.
[20]     Docket No. 9
[21]     Docket No. 14.

**2.      Dismissal of the Trustee and David Miller.**

Meanwhile, David Miller submitted a "Motion to Dismiss."[22]  The Trustee joined.[23] Apparently in response, the Debtor filed a "Notice of Dismissal Without Prejudice of Defendants Jeanne Y. Jagow and David M. Miller."[24]  Accordingly, the Trustee and Mr. Miller have been dismissed as defendants in this Adversary Proceeding[25] leaving Ms. German as the sole remaining defendant.

**3.      The Amended Complaint.**

Without awaiting an Order addressing either the Motion for Authority or the Motion for Extension, the Debtor proceeded to file an "Amended Complaint" (the "Amended Complaint")[26] on behalf of herself and supposedly for Celestial Properties. The Amended Complaint dropped the Trustee and Mr. Miller as named defendants but listed "Robinson & Henry, P.C." (Ms. German's law firm as a defendant).  The Amended Complaint did not identify any new claims but instead seemed to reference the claims in the original Complaint.

Thereafter, the Court entered an "Order Regarding Further Filings in this Adversary Proceeding" (the "Further Filings Order").[27]  The Court accepted the dismissal of the claims against the Trustee and Mr. Miller, but denied the request to file the Amended Complaint pending determination as to the Debtor's ability to file documents for Celestial Properties.[28]  The Court also ordered "the Debtor may make no further filings on behalf of Celestial [Properties] until and unless the Court determines that she has authority to do so" and warned that any non-compliant documents could be stricken from the record.[29]

**4.      Dismissal of Celestial Properties.**

Meanwhile, in the Chapter 7 Case, the Debtor filed a "Motion of Sherry McGann, as Sole Member of Celestial Properties, LLC, and Acting on Behalf of Celestial Properties, LLC, Requesting an Order of Recusal of Judge Thomas B. McNamara and Abandonment of the Membership Interest in Celestial Properties, LLC and All Claims Held by Celestial Properties, LLC That Are Considered Property of the Bankruptcy Estate" (the "Motion to Abandon").[30]  The Trustee filed an "Objection to Debtor's Motion for Abandonment of Membership Interest in Celestial Properties, LLC" (the "Objection to

---

[22]      Docket No. 12.
[23]      Docket No. 13.
[24]      Docket No. 15.
[25]      Docket No. 17.
[26]      Docket No. 16.
[27]      Docket No. 18.
[28]      *Id.*
[29]      *Id.*
[30]      Chapter 7 Case Docket No. 694.

Motion to Abandon").[31]  Therefore, the question of whether the Debtor's pre-petition membership interest in Celestial Properties would remain property of the bankruptcy estate remained at issue.  Because control of Celestial Properties and the Debtor's ability to act on its behalf had to be determined before this Adversary Proceeding could proceed with respect to Celestial Properties, the Court deferred ruling on the Motion for Authority and the Motion for Extension.

Later, the Trustee withdrew her Objection to Motion to Abandon.  Therefore, on October 14, 2025, the Court issued an "Order to Abandon Membership Interest in Celestial Properties, LLC" in the Chapter 7 Case (the "Abandonment Order").[32]  As set forth in the Abandonment Order, the Court ordered that "the [Chapter 7] Trustee shall abandon the Estate's membership interest in Celestial Properties, LLC.  Ownership of the Estate's membership interest in Celestial Properties, LLC hereby reverts to the Debtor."[33]

Given the foregoing, the Court determined that the Debtor, who now had regained the right to control Celestial Properties, had the authority to act on behalf of Celestial Properties in this Adversary Proceeding.  The Court, therefore, twice extended the deadline for an attorney to enter an appearance on behalf of Celestial Properties.[34] The Court ordered:

> Celestial Properties shall have up to and including November 17, 2025, by which to retain counsel to represent it in its prosecution of the Complaint.  If counsel authorized to practice in this Court has not entered an appearance on behalf of Celestial Properties by such date, Celestial Properties will be dismissed as a Plaintiff without further notice.

Celestial Properties failed to retain legal counsel within the extended deadline.  So, on November 18, 2025, the Court dismissed Celestial Properties as a plaintiff from this Adversary Proceeding.[35]

### 5.   The Remaining Claims Against Ms. German and Her Motion to Dismiss.

Therefore, at this stage in this Adversary Proceeding, the original Complaint is the operative pleading.  The Trustee and David Miller have been dismissed as defendants.  Only the First Claim and Fourth Claim remain pending as against Ms. German.  Further, the only plaintiff in the case is the Debtor, who is appearing *pro se*. Again, Celestial Properties has been dismissed.

---

[31]   Chapter 7 Case Docket No. 709.
[32]   Chapter 7 Case Docket No. 759.
[33]   *Id.* at 2.
[34]   Docket No. 33.
[35]   Docket No. 38.

On August 25, 2025, Ms. German responded to the Complaint by filing a "Motion to Dismiss" (the "Motion to Dismiss")[36] asserting that the Complaint must be dismissed. She argued that the statute of limitations had run on the First Claim and the Debtor's Fourth Claim failed to state a claim upon which relief can be granted for aiding and abetting breach of fiduciary duty.  Ms. German also asserted that the Debtor's First Claim, though styled as a claim for "Legal Malpractice/Breach of Fiduciary Duty" was really just a single claim for legal malpractice based upon alleged negligence.

On August 29, 2025, the Debtor filed a "Response in Opposition" (the "Response") to the Motion to Dismiss.[37]  She disputed that the Complaint should be dismissed.  Thereafter, Ms. German filed a "Reply in Support of Motion to Dismiss" (the "Reply")[38] and the Debtor filed a "Motion for Leave to File Sur-Reply to Defendant's Reply in Support of Motion to Dismiss" (the "Motion for Leave to File")[39] to which she attached a proposed "Sur-Reply."  The Court granted the Motion for Leave to File and the Sur-Reply has been accepted.[40]  The disputed matter — framed by the Motion to Dismiss, Response, Reply, and Sur-Reply — is now ripe for determination.

## IV.   Legal Framework.

### A.   Legal Standards for Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the plaintiff.  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  Under the refined pleading standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  *See also Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (referring to clarified standard under *Twombly* and *Iqbal* as a "refined standard").

Under the "refined standard," a claim is considered "plausible" when the complaint contains facts which allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "Plausible" does not mean "probable", although the plaintiff must show that its entitlement to relief is more than speculative.  *Twombly*, 550 U.S. at 555, 556-57.  If the allegations in a complaint "are so general that they encompass a

---

[36]     Docket No. 25.
[37]     Docket No. 26.  Notwithstanding the Further Filings Order, the Debtor filed the Response on behalf of both herself and, purportedly, on behalf of Celestial Properties.  Since Celestial Properties has been dismissed as a plaintiff, the Court construes the Response, and further filings in this Adversary Proceeding as applicable to the Debtor in her individual capacity only.
[38]     Docket No. 31.
[39]     Docket No. 32.
[40]     Docket Nos. 41 and 42.

wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Kansas Penn*, 656 F.3d at 1215 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) and *Twombly*, 550 U.S. at 570).  Put another way, "the complaint must give the Court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

"The nature and specificity of the allegations required to state a plausible claim will vary based on context."  *Kansas Penn*, 656 F.3d at 1215; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  Thus, the Tenth Circuit has held that "the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'"  *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Robbins*, 519 F.3d at 1247) (internal quotation marks and citations omitted in *Khalik*).

The Court is bound to accept only factual allegations as true and will not give deference to legal conclusions.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Legal conclusions must be supported by well-pleaded factual allegations, which can be assumed as true and evaluated as to whether they plausibly give rise to the requested relief.  *Id.* at 679.  This process is a context-specific task which depends on the elements of a particular claim and requires the Court to draw upon its judicial experience and common sense.  *Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 679).  Careful evaluation is necessary both to ensure that a defendant is sufficiently able to prepare his defense and to avoid "ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim."  *Kansas Penn*, 656 F.3d at 1215 (internal quotation omitted).

Ultimately, the critical question is:  "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the compliant "raise[s] a right to relief above the speculative level.'" *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  It is a low threshold.  "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias*, 567 F.3d at 1178 (quoting *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir. 2001)).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

**B.**     **Legal Standards for Statutes of Limitations Defenses Presented under Fed. R. Civ. P. 12(b)(6).**

Special rules apply where a motion to dismiss is predicated on an assertion that the claims are barred by a statute of limitations.  As the Tenth Circuit Court of Appeals explained:  "Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"  *Cosgrove v. Kansas Dep't of Soc. & Rehab. Servs.*, 332 Fed. App'x. 463, 465 (10th Cir. 2009) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)) (unpublished opin.).  It is "only when the complaint admits all the elements of the affirmative defense" that dismissal under Rule 12(b)(6) is proper.  *Rivero v. Board of Regents of University of New Mexico*, 950 F.3d 754, 760 (10th Cir. 2020); *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019).  Indeed, a plaintiff has no burden to anticipate an affirmative defense and plead facts negating it.  *Rivero*, 950 F.3d at 759-60.  *See also Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).").

## V.     Summary of General Factual Allegations in the Complaint.

In the Complaint, the Debtor presented five pages of "Factual Background" in unnumbered paragraphs.  The Court summarizes the key alleged facts, which must be accepted as true, as follows:

The Debtor retained Ms. German in 2018 to represent her in filing a bankruptcy case.  She provided Ms. German with a "reorganization plan and demonstrated ability to resolve or pay all valid claims, not being contingent on the removal of fraudulent liens."[41]

The Debtor filed the Chapter 11 Case with the intent to reorganize business debts and "remove fraudulent liens" arising from what the Debtor characterizes as "fake claims" asserted by former business partners.  The Debtor's business, Celestial Properties, held significant property assets and had a viable operating model for development.  Ms. German acknowledged that the Debtor's proposed plan was feasible and "advised that it could be filed with supporting schedules."[42]

At some point before or after the Chapter 11 Case was filed, Ms. German informed the Debtor of "fraudulent deeds of trust" filed against the home owned by the Debtor (which property the Debtor characterizes as the "Grand Lake Property") and of "false claims" submitted against the Debtor's former business partners as Claims Nos. 13-16 in her bankruptcy case.  Such "fraudulent claims," and another claim, Claim No.

---

[41]     Docket No. 1 at 3.
[42]     *Id.* at 3.

11, "artificially inflated' the amount of the Debtor's debts such that she was rendered ineligible to file for bankruptcy under Chapter 13.[43]

In the fall of 2020, Ms. German advised the Debtor to voluntarily dismiss the Chapter 11 Case and refile under Chapter 7.  Ms. German represented that doing so would "simplify the process, allow extension of the automatic stay, and preserve [the Debtor's] ability to convert the case to Chapter 13 once the fraudulent liens were addressed."[44]

Ms. German advised the Debtor that, when she filed under Chapter 7, the Grand Lake Property would become part of the bankruptcy estate.  However, she "framed this as a routine procedural requirement" and assured the Debtor that "as long as she had sufficient funds to pay valid creditors in full and could show proof of ability to do so quickly, her rights would be preserved."[45]  And, Ms. German advised the Debtor that she would "most likely" not be forced to sell her home and that claims would be released in accordance with a settlement agreement.[46]

Ms. German filed the Chapter 7 Case on the Debtor's behalf on December 22, 2020.  Following the filing, Ms. German monitored the trustee rotation.  Later, she advised the Debtor that the Trustee had been selected to serve as trustee for the Debtor's bankruptcy estate.[47]

On December 31, 2020, Ms. German filed a Verified Statement in support of a Motion to Extend the Automatic Stay.  Therein, she stated that the Chapter 7 route was more beneficial.  The Verified Statement omitted various "material facts," including the following:[48]

---

[43]   Id. at 4.
[44]   *Id.*
[45]   *Id.*
[46]   *Id.*
[47]   *Id.*
[48]   *Id.* at 5.

- McGann's prepared and viable Chapter 11 Plans. See February 17, 2020 deposition involving Attorney Elizabeth German and counsel for 1450 Oka Kope, referencing Exhibit 5 (Monthly Operating Report dated 12/23/2019) and Exhibit 6 (Monthly Operating Report dated 1/21/2020), **indexed at Page 4 of Exhibit A**. A full transcription of the 154-page hearing is available and will be provided upon request. These materials were originally received through German while she served as counsel of record.

- The anticipated recovery of over **$1.3 million** from the sale of real property in Maui, lost under the Trustee's administration.

- Approximately **$250,000 in personal property** located in Maui remains unaccounted for, with no documented recovery efforts by the Trustee.

- A **$144,883 judgment** payable to the estate was viable, enforceable, and preserved for years—then was inexplicably abandoned without judicial explanation or evidentiary hearing.

- Multiple viable **insurance claims**, including those against **Volk Construction** and **Wide Open Construction**, were ignored by the Trustee, resulting in the expiration of applicable statutes of limitations and permanent loss to the estate.

After the Chapter 7 filing, Ms. German participated in communications concerning a settlement agreement.  She advised the Debtor that if the Debtor could demonstrate available funds and resolve disputed liens, the case could be settled without liquidation of her home.[49]  As early as March 2022, the Debtor offered to pay all creditors immediately, "regardless of the outcome of Claims Nos. 13-16," and provided documented proof of her ability to do so.[50]  And, she agreed to the settlement, believing that the disputed claims would be resolved and that her rights in Celestial Properties and her home would be protected.[51]

In early 2022, the Debtor moved to convert the Chapter 7 Case to Chapter 13 or to dismiss the case.  However, the Trustee and her counsel objected.  Shortly thereafter, Ms. German moved to withdraw as counsel.  Despite the withdrawal, Ms. German continued to provide legal advice and resources through at least October 2023.

The Trustee failed to perform what the Debtor characterizes as "fundamental fiduciary duties" during the Chapter 7 case, including:[52]

---

[49]   *Id.* at 5-6.
[50]   *Id.* at 3-4 and 7.
[51]   *Id.* at 4.
[52]   *Id.* at 6.

- Collecting the $144,883 judgment in favor of the estate;
- Protecting or liquidating personal property valued at approximately $250,000;
- Preserving or accounting for over $1.3 million in proceeds from the sale of the Maui property;
- Pursuing available insurance claims against Volk Construction and Wide Open Construction;
- Filing timely and accurate estate tax returns, resulting in preventable IRS penalties.
- Facilitating and enabling the continuation of Claim No. 11—despite its origin as a stay violation—until it matured into a judgment solely due to trustee inaction. After years of pro se litigation, McGann succeeded on appeal in having that judgment vacated and remanded.

The foregoing failures were a direct result of Ms. German's legal strategy and advice through February 2022 and her "continued informal involvement thereafter."[53] The Debtor believes that such failures have harmed the Debtor and her estate.[54]  The Trustee has demanded over $380,000 in administrative fees and refused to dismiss the case.  As a result, Celestial Properties remained in estate control without valuation, administration, or accounting.  And, the Debtor was effectively prevented from pursuing claims on Celestial Properties' behalf.

## VI.    Legal Analysis.

In the Motion to Dismiss, Ms. German requested that the Court dismiss both the First Claim and the Fourth Claim (the only claims that have been asserted against Ms. German).  She asked that the Court dismiss the First Claim on the ground that the statute of limitations for filing the First Claim had expired and also contended that the part of the First Claim asserting legal malpractice based upon breach of fiduciary duty should be dismissed as duplicative.  The Debtor also moved for dismissal of the Fourth Claim based on an alleged "failure to state a claim upon which relief can be granted" pursuant to Fed. R. Civ. P. 12(b)(6).

## A.    The Court Will Not Consider Materials Extraneous to the Complaint.

In the Motion to Dismiss, in the section labeled "Factual Allegations," Ms. German asserted new facts related to her withdrawal as counsel from the Debtor's Chapter 7 Case, submitting with the Motion to Dismiss a letter marked as Exhibit A (the "Withdrawal Letter").[55]  This is not typical practice at the Motion to Dismiss stage. Therefore, the Court must evaluate whether to consider the new facts interjected by Ms. German in the Motion to Dismiss, including the Withdrawal Letter.

---

[53]    *Id.* at 7.
[54]    *Id.*
[55]    Docket No. 25 ¶ 8 and Ex. A.

Fed. R. Civ. P. 12(d) states the general rule:

> If on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all material that is pertinent to the motion.

The reason for the foregoing is fairly obvious.  Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are designed merely to test to the sufficiency of the allegations presented by a plaintiff in a complaint.  To adjudicate a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court is supposed to accept the well-pleaded factual allegations in a complaint as true. *Iqbal*, 556 U.S. at 679; *Burnett*, 706 F.3d at 1235.  And, then, the process requires to the Court to consider whether the plaintiff's allegations — accepted as true — are sufficient to "state a claim upon which relief can be granted."  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not a mechanism to dispute the facts or argue about the ultimate merits.  *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted.").  If a defendant wants to dispute the facts or argue the merits, then it must do so through a motion for summary judgment or trial.

However, there is a narrow exception to this general procedural sequence under Fed. R. Civ. P. 12(b)(6):

> [I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss . . .
>
> If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.  Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind.  When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.

*GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (citations omitted); *Burke v. Holdman*, 750 Fed. Appx. 616, 620 (10th Cir. Sept. 13, 2018) (unpublished).

Ms. German recognized the exception to the rule barring consideration of materials extraneous to the Complaint but nonetheless submitted the Withdrawal Letter with the Motion to Dismiss and requested that the Court consider it in ruling on the Motion to Dismiss.[56]  Though Ms. German cited case law in which courts generally acknowledge the existence of the exception, she does not offer any argument in support of her contention that consideration of the Withdrawal Letter is appropriate at this stage of this Adversary Proceeding or under the circumstances presented.  Instead, she simply contended, in a conclusory fashion, that the exception applies and then argued that the Withdrawal Letter demonstrates that the Debtor's claims accrued, at the latest, as of date that the Withdrawal Letter was written:  January 24, 2022.[57]

Having considered the matter, the Court finds that the Withdrawal Letter should not be considered at the Fed. R. Bankr. P. 12(b)(6) stage.  The Debtor did not reference the Withdrawal Letter in the Complaint, and the Withdrawal Letter may not be dispositive of her claim.  The Withdrawal Letter is but one piece of evidence which may, or may not, when viewed with other evidence, support her contention that the Debtor knew of her claims against Ms. German as of the date of the Withdrawal Letter such that the statute of limitations now bars the claims.

As a result of Ms. German's attempting to interject new facts and extraneous documents through the Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court is faced with a choice.  The Court may either:  (1) convert the Motion to Dismiss into a motion for summary judgment under Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, and also provide the Debtor with the additional procedural protections governing summary judgment process; or (2) exclude from consideration the new alleged facts and extraneous documents.  *See* Fed. R. Civ. P. 12(d) (providing for conversion of Fed. R. Civ. P. 12(b)(6) motion to dismiss into motion for summary judgment under Fed. R. Civ. P. 56); *Geras v. Int'l Bus. Machs. Corp.*, 638 F.3d 1311, 1314-15 (10th Cir. 2011) (trial court was not required to consider the extraneous materials submitted by plaintiff in connection with Fed. R. Civ. P. 12(b)(6) motion).  The decision is discretionary with the trial court.  *Id.*

In this case, the Court determines that all the new facts alleged by Ms. German in the Motion to Dismiss should be excluded.  After all, neither Ms. German nor the Debtor has asked that the Court convert the Motion to Dismiss into a motion for summary judgment under Fed. R. Civ. P. 56, and the Debtor has not been provided with an opportunity to present other documents, affidavits, or declarations that support her contention that other facts exist which show that the claim did not accrue at the time the Withdrawal Letter was sent.  *See* Fed. R. Civ. P. 56(c)(1).  Conversion would unnecessarily complicate the proceedings.  So, the Court will rule on the Motion to

---

[56]     Docket No. 25 at 6.
[57]     Docket No. 25 at 9.

Dismiss without considering the extraneous alleged new facts asserted by Ms. German or the Withdrawal Letter.  *Geras*, 638 F.3d at 1314-15; *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (trial court has discretion to decline to consider extraneous documents).  The Court's discretionary decision to exclude the alleged new facts advanced by Ms. German at the Motion to Dismiss stage is without prejudice to either party's right to offer evidence in support of such factual allegations at a later stage of this Adversary Proceeding.

**B.     The Court Denies Dismissal of the First Claim, in Part, but Finds that Part of the Claim is Duplicative.**

The title of the First Claim is: "Legal Malpractice / Breach of Fiduciary Duty."  In essence, the Debtor alleged that Ms. German provided flawed legal advice, engaged in misrepresentations, and abandoned the Debtor.  In the Motion to Dismiss, Ms. German asserted that, though couched as two claims, the Debtor's First Claim is really just a single claim: a claim for professional negligence — not a claim for breach of fiduciary duty.  Further, Ms. German asserted that the claim must be dismissed as having been brought outside of the statute of limitations set forth in Colo. Rev. Stat. § 13-80-102(1)(a).[58]  The Debtor disagrees, asserting that the First Claim encompasses causes of action for both negligence and breach of fiduciary duty, and asserts that the claim is not time-barred.[59]

**1.     The Nature of the First Claim.**

In support of the argument that the Debtor has asserted a general claim for professional malpractice, Ms. German cited *Smith v. Mehaffy*, 30 P.3d 727, 733 (Colo. App. 2000).  In that case, the Colorado Court of Appeals explained:

> Legal malpractice is a generic term for at least three distinct causes of action available to clients who suffer damages because of their lawyers' misbehavior.  Clients wronged by their lawyers may sue for damages based on (1) breach of contract, (2) breach of fiduciary duty, or (3) negligence.

*Id*.  The *Mehaffy* court recognized that there is more than one variety of "legal malpractice" claim, noting that legal malpractice may arise from an attorney's breach of contract, or from an attorney's breach of fiduciary duty (including breach of the duties of loyalty and confidentiality); or from negligence.  *Id*.  Further, the Court recognized a distinction between kinds of breaches in the legal malpractice context, stating:  "Legal malpractice actions based on negligence concern violations of a standard of care, whereas legal malpractice actions based on breach of fiduciary duty concern violations of a standard of conduct."  *Id*.  *See also Aller v. Law Off. of Carole C. Schriefer, P.C.*, 140 P.3d 23, 27 (Colo. App. 2005) (recognizing that malpractice claims may be founded on negligence or on breach of fiduciary duty and citing *Mehaffy*).  The court recognized

---

[58]     Docket No. 25 at 6-8.
[59]     Docket No. 26 at 2-4.

15

that "while legal malpractice actions may involve a simultaneous breach of trust, a claimed fiduciary violation may also be separate and independent from any alleged negligence."  Thus, as a matter of Colorado law, "[l]egal malpractice may be shown either through an act of negligence in the provision of a service or a breach of a fiduciary duty owed to the client." *Sensoria, LLC v. Kaweske*, 548 F. Supp.3d 1011, 1030 (D. Colo. 2021) (citing *Parks v. Edward Dale Parrish LLC*, 452 P.3d 141, 146 (Colo. App. 2019) and *Aller*, 140 P.3d at 27).

### 2. The Debtor Has Asserted a Plausible Legal Malpractice Claim Based on Negligence.

"To succeed on a legal malpractice claim founded in negligence, a plaintiff must establish that (1) the attorney owed a duty of care to the plaintiff; (2) the attorney breached that duty; and (3) the attorney proximately caused damage to the plaintiff. *Hopp & Flesch, LLC v. Backstreet*, 123 P.3d 1176, 1183 (Colo. 2005); *Luttgen v. Fisher*, 107 P.3d 1152, 1154 (Colo. App. 2005).

With respect to the first species of her malpractice claim (*i.e.,* that Ms. German was negligent in her advice to the Debtor prior to and during both the Chapter 11 Case and the Chapter 7 Case), the Debtor has alleged that she engaged Ms. German as bankruptcy counsel, which gives rise to a duty of care.  She has alleged that, in the course of the Debtor's Chapter 11 Case and Chapter 7 Case, Ms. German provided her with poor legal advice that did not meet the standard of care in carrying out her representation of the Debtor.  Accepting the facts alleged in the Complaint as true, the Debtor asserted that such substandard legal advice included, among other things: Ms. German advising that filing for Chapter 7 would "simplify the process" and "preserve McGann's ability to convert to Chapter 13"; Ms. German stating that "McGann would most likely not be forced to sell her home"; Ms. German "omit[ing] material facts in Court filings; and Ms. German negligently advising about settlement.  Also, the Debtor has alleged that, as a result of her reliance on such poor advice, she was damaged.

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the Debtor.  *Burnett*, 706 F.3d at 1235.  Under the refined pleading standard articulated by the Supreme Court in *Iqbal* and *Twombly*, a complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is considered "plausible" when the complaint contains facts which allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court finds that the foregoing factual allegations in the Complaint are sufficient to state a claim for legal malpractice predicated on negligence pursuant to Fed. R. Civ. P. 12(b)(6) standards.  So, such claim must not be dismissed at this juncture.

**3.**     **The Legal Malpractice Claim Based on Breach of Fiduciary Duty Is Merely Duplicative.**

To state a claim for breach of fiduciary duty, a plaintiff must assert that (1) the defendant was acting as a fiduciary of the plaintiff; (2) the defendant breached a fiduciary duty to the plaintiff; (3) the plaintiff incurred damages; and (4) the defendant's breach of fiduciary duty was a cause of the plaintiff's damages. *Taylor v. Taylor*, 381 P.3d 428, 431 (Colo. App. 2016) (citing *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993)). *See also Miller v. Byrne,* 916 P.2d 566, 575 (Colo. App.1995) (same, with respect to claim for attorney malpractice founded in breach of fiduciary duty).

While a claim for fiduciary-duty-based malpractice may, in some cases, be a claim which stands on its own, independent of a claim for negligence-based malpractice, "[w]hen a legal malpractice claim and a breach of fiduciary duty claim arise from the same material facts, the breach of fiduciary duty claim should be dismissed as duplicative." *Mehaffy*, 30 P.3d at 733 (citing *Moguls of Aspen, Inc. v. Faegre & Benson*, 956 P.2d 618 (Colo. App.1997)). *See also Aller v. Law Off. of Carole C. Schriefer, P.C.*, 140 P.3d 23, 27 (Colo. App. 2005) (noting that in some cases, such as when an attorney siphons off a client's funds for personal gain, an attorney's fiduciary duty may exist for reasons other than those imposed on her as an attorney and suggesting that a claim for malpractice based on breach of fiduciary duty may lie where the misconduct alleged may "be characterized as something other than professional negligence").

Ms. German contended that the Debtor's claim for malpractice predicated on breach of fiduciary duty is duplicative of her claim for malpractice predicated on negligence because the fiduciary-duty-based claim arises from the same material facts as the negligence-based claim. The Debtor fails to meet the *Twombly/Iqbal* standard, Ms. German argued, because she merely labels the claim as a claim for breach of fiduciary duty and labels certain conduct as a "conflict," when, in fact, "the allegations underlying the claim are identical and arise solely from [Ms.] German's professional judgment pertaining to the representation."[60]

In her Response, the Debtor argued that the Complaint states sufficient facts to plead a claim for malpractice predicated on a breach of fiduciary duty. She contends

> Ms. German acted with divided loyalty by monitoring and steering the trustee appointment process and failing to disclose her role to the Court. [Ms. German] further failed to provide counsel through completion of the "settlement," despite drafting language that Plaintiff relied upon in Doc. #93-1, pg. 7. That provision, which Judge Brown acknowledged at the May 3, 2022 hearing would be produced as a "carve-out," has not been addressed in subsequent hearings since Judge McNamara assumed the

---

[60]     Docket No. 25 at 7-8.

case in July 2023.  These are not allegations of mere
negligence, but classic breaches of loyalty and candor that
Colorado law recognizes as independent fiduciary violations.
. . . .

[Ms. German] participated in the informal process of
monitoring and ultimately steering the appointment of
Trustee Jagow, without disclosure to the Court, and then
advised her client to accept that appointment and settlement
position as if it were unavoidable.  She further drafted a
Verified Statement (Dec. 31, 2020) and a withdrawal letter
(Jan. 24, 2022) that misrepresented Plaintiff's options,
presenting acquiescence to the Trustee as the "only way"
forward.  These acts are not simply negligent missteps; they
are classic violations of the fiduciary duties of loyalty and
candor described in *Smith v. Mehaffy*.[61]

"A fiduciary relationship exists as a matter of law between an attorney and his or
her client."  *Moye White LLP v. Beren*, 320 P.3d 373, 377 (Colo. App. 2013) (citing
*Moguls of Aspen*, 956 P.2d at 621).  "However, whether the attorney is under a fiduciary
duty to act in a certain manner depends on the individual circumstances of the
relationship."  *Id.* (citing *Steiger v. Burroughs*, 878 P.2d 131, 134 (Colo. App. 1994)).

Courts have recognized independent claims for malpractice predicated on breach
of fiduciary duty in only a few circumstances.  As the *Aller* court noted, a claim for
breach of fiduciary duty "may be characterized as something other than negligence . . .
where an attorney abuses of a position of trust with the client by siphoning a client's
funds for personal gain."  140 P.3d at 28.  Similarly, courts have held that a claim for
breach of fiduciary duty is distinguishable from a claim for negligence where an
attorney's loyalty is divided.

For example, in *Boyd v. Garvet*, 9 P.3d 1161 (Colo. App. 2000), the court
determined that a claim for breach of fiduciary duty was not duplicative of a claim for
malpractice based on negligence where the plaintiffs' attorney, who had been engaged
by the plaintiffs to represent them in connection with relinquishment of their baby (but
failed to advise them during such representation of their right to seek relinquishment
counseling), also represented the baby's adoptive parents so as to ensure that the
adoption went through.  In explaining why the claims were not duplicative, the court
stated:

The breach alleged in the professional negligence claim was
attorney's failure to advise plaintiffs of the availability of
relinquishment counseling.  In contrast, the alleged breach of
fiduciary duty was based on an assertion of attorney's self-
interest and conflict of interest.

---

[61]    Docket No. 26 at 2-3.

> The claims here were not duplicative because the breached duties were not based on the same facts. Thus, the jury could have found attorney liable for both negligence and breach of fiduciary duty, as they did, based on the breach of different and separate duties . . . .

*Id.* at 1163 (citations omitted).

In another case regarding divided loyalty, *Dury v. Ireland, Stapleton, Pryor & Pascoe*, 2009 WL 2139856 (D. Colo. 2009), the court, citing *Aller*, determined that a plaintiff's claim for breach of fiduciary duty could properly "be characterized as something other than professional negligence" such that it need not be dismissed as duplicative. The court described the circumstances that rendered the claim as distinct from one for negligence-based malpractice:

> Plaintiff's complaint includes sufficient allegations of actions that can "be characterized as something other than professional negligence." Plaintiff alleges Defendant Miller received an undisclosed "cash gift" and other payments from Ms. Malone and had an attendant financial interest in protecting Ms. Malone's control over the Trinity Entities. To this end, Defendant Miller concealed from Plaintiff that Ms. Malone improperly took monies belonging to the Trinity Entities for her own personal needs; acted in collusion with Ms. Malone and Ms. Ciccone to secure monies from the Trinity Entities which they were not properly due, and to secure loans from Plaintiff with knowledge that the loans would not be repaid; and, with assistance from Defendant Ireland firm, acted to divest Plaintiff of his position within the Trinity Entities and to harm Plaintiff's financial position as it related to the Trinity Entities. These acts — while they have some bearing on Plaintiff's professional negligence claims — support the additional breach of fiduciary duty claim.

In this case, accepting all the well-pleaded facts in the Complaint as true, the Debtor has not adequately alleged a separate or independent claim for legal malpractice based upon breach of fiduciary duty. The Debtor has not asserted that Ms. German siphoned the Debtor's funds for personal gain. The Debtor has not alleged that Ms. German represented the Trustee or otherwise had a conflict of interest in representing the Debtor. The well-pleaded facts do not raise a plausible inference that Ms. German had a "conflict" or a "pre-alignment" with the Trustee or any other person. Though the Debtor alleges that Ms. German's strategy to select the Trustee turned out to be a bad legal decision that ultimately harmed the Debtor, she does not allege that Ms. German was acting out of allegiance to the Trustee or in an effort to benefit anyone other than the Debtor. And, though the Debtor asserts that Ms. German provided her

with poor legal advice with respect to a settlement agreement, and failed to advise her as to other available options, she does not plead any facts that would allow the Court to infer that, at the time she provided such advice, Ms. German acted with other than the Debtor's interests in mind or that her loyalties were divided. Not of the facts alleged by the Debtor point to abuse of a position of trust by Ms. German.

Instead, at bottom, all that is alleged is a breach of the standard of care — in other words, that Ms. German gave bad legal advice. As such, the Court determines that the Debtor's assertion of breach of fiduciary duty is purely duplicative of her claim for malpractice predicated on negligence, and that she has failed to state a claim for malpractice based on a breach of fiduciary duty. *See Aller*, 140 P.3d at 28 ("Where, as here, an attorney makes a decision based on professional judgment pertaining to the representation of a client, the cause of action is indistinguishable from one for professional negligence."). Accordingly, to the extent that the First Claim purports to state a claim for legal malpractice based upon breach of fiduciary duty, it must be dismissed. *Mehaffy*, 30 P.3d at 733 ("[w]hen a legal malpractice claim and a breach of fiduciary duty claim arise from the same material facts, the breach of fiduciary duty claim should be dismissed as duplicative.").

### 4. The Statute of Limitations Does Not Bar the First Claim At This Stage.

#### a. The Motion to Dismiss on Statute of Limitations Grounds and Response.

In the Motion to Dismiss, Ms. German argued that the First Claim is barred by the statute of limitations, asserting that Ms. German's Withdrawal Letter and correspondence with the Debtor during Ms. German's representation of the Debtor demonstrate that the malpractice claim accrued no later February 2022. The Debtor disagrees that the claim had accrued by February 2022, arguing that her injury did not become apparent until July 2023 when the Trustee allegedly disavowed the "carve out" drafted by Ms. German and further that she did not have confirmation that Ms. German's advice had caused damages until, at the earliest, October 2024, when she was advised by different legal counsel that approval of the settlement agreement had harmed the Debtor.

#### b. Legal Authority Applicable to Motions to Dismiss on Statute of Limitations Grounds.

"The statute of limitations bars legal malpractice actions based on negligence brought more than two years after the action accrues." *Boulders at Escalante LLC v. Otten Johnson Robinson & Ragonetti PC*, 412 P.3d 751, 757 (Colo. App. 2015) (citing Colo. Rev. Stat. § 13-80-102(1)(a) and *Morrison v. Goff*, 91 P.3d 1050, 1052 (Colo. 2004)). COLO. REV. STAT. § 13-80-102 provides, in relevant part:

> (1) The following civil actions, regardless of the theory upon
> which suit is brought, or against whom suit is brought, must

> be commenced within two years after the cause of action accrues, and not thereafter:

> > (a) Tort actions, including but not limited to actions for negligence, trespass, malicious abuse of process, malicious prosecution, outrageous conduct, interference with relationships, and tortious breach of contract . . . .

A cause of action for legal malpractice accrues when a plaintiff learns facts that would put a reasonable person on notice of the general nature of the damage and that the damage was caused by the wrongful conduct of an attorney. *Morrison v. Goff*, 91 P.3d 1050 (Colo. 2004); *Torrez v. Edwards*, 107 P.3d 1110, 1113 (Colo. App. 2004); *Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860 (Colo. App. 1998). "This determination must be made on a case-by-case basis by examining each plaintiff's specific knowledge of the relevant underlying facts." *Boulders at Escalante*, 412 P.3d at 758 (citing *Morrison*, 91 P.3d at 1056-57).

> "The time when a plaintiff discovered, or through the use of reasonable diligence should have discovered, the negligent conduct is normally a question of fact which must be resolved by the trier of fact." . . . Only "[i]f the undisputed fact[s] clearly show that a plaintiff discovered, or reasonably should have discovered, an attorney's negligent conduct as of a particular date, [may] the issue ... be decided as a matter of law." . . .

*Id.* (internal citations omitted).

### c.   <u>Dismissal Based Upon a Statute of Limitations Defense Is Not Warranted At This Time</u>.

As discussed above, the Court has determined that consideration of the Withdrawal Letter is inappropriate at the Fed. R. Civ. P. 12(b)(6) stage of this Adversary Proceeding.  The same is true with respect to Ms. German's assertions about the contents of other correspondence between the parties.[62]  And, in the Complaint, the Debtor did not plead facts demonstrating that she had discovered, or reasonably should have discovered, Ms. German's negligent conduct as of a particular date.  Put differently, "the dates given in the Complaint [do not] make clear that the right sued upon has been extinguished." *Cosgrove,* 332 Fed. Appx. at 465.  Therefore, the Court cannot assess the propriety of dismissing the First Claim on statute of limitations grounds at this time based only on the Complaint.  If Ms. German wishes to assert a statute of limitations affirmative defense, she must plead such defense in an answer and defend in the normal course of civil and bankruptcy procedure.

---

[62]     Such  correspondence has not been submitted to the Court, and it would be improper for the Court to accept as factual Ms. German's characterization of the contents of such correspondence at this stage of the proceedings.

### d.      Conclusion Regarding the First Claim.

The Debtor has alleged sufficient facts to state a claim for malpractice predicated on negligence, but her claim for malpractice based on fiduciary duty is duplicative of the negligence-based claim.  Therefore, the Motion to Dismiss must be denied with respect to the part of the First Claim premised on legal malpractice by negligence; however, the part of the First Claim asserting legal malpractice by breach of fiduciary duty is wholly duplicative and must be dismissed.  Whether the First Claim is barred by the statute of limitations is not a matter which can be properly decided at this stage of the case.

## C.      The Court Grants Dismissal of the Fourth Claim.

### 1.      Summary of Allegations in Support of the Fourth Claim.

In her Fourth Claim, for aiding and abetting breach of fiduciary duty, the Debtor asserted that Ms. German aided and abetted the Trustee's breach of fiduciary duty, including breaching the Trustee's duty of loyalty to the Debtor, causing the Debtor to suffer damages and losses.

### 2.      Elements of Aiding and Abetting Breach of Fiduciary Duty.

"[A] claim for aiding and abetting a breach of fiduciary duty requires the plaintiff to show (1) breach by a fiduciary of a duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages."  *Colucci v. Nat'l Bd. of Chiropractic Examiners*, 2020 WL 364563, at *4 (D. Colo. Jan. 22, 2020) (unpublished) (citing *Nelson v. Elway*, 971 P.2d 245, 249 (Colo. App. 1998) and *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App. 2007)).  *See also Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) ("To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship.") (citations omitted).

### 3.      The Motion to Dismiss the Fourth Claim and Response.

Ms. German asserted that the Fourth Claim must be dismissed because the Debtor has failed to "allege sufficient plausible facts to demonstrate the required elements of [her] aiding and abetting claim" and relies on mere labels and conclusions which are insufficient as a matter of law to state a claim.[63]

The Debtor disagrees, arguing that she alleges in the Complaint that Ms. German "knowingly facilitated Trustee Jagow's appointment and strategy, which in turn led to breaches of fiduciary duty including the failure to preserve CP claims, failure to

---

[63]      Docket No. 25 at 11.

collect a $144,883 judgment, loss of $1.3 million in Maui property proceeds, and perpetuation of Claim No. 11."[64]

### 4.     The Debtor Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty.

The Debtor has alleged that the Trustee owed her a fiduciary duty to administer and account for assets of the bankruptcy estate, and she has alleged that the Trustee breached that fiduciary duty by failing to administer and account for assets properly. The Debtor has also alleged that she was damaged as a result of the Trustee's alleged breach.  So, the Debtor has alleged facts supporting some elements of her claim.  But, critically, the Debtor failed to properly allege any facts which suggest that Ms. German was a participant in the Trustee's breaches of fiduciary duty, let alone a knowing participant.  In particular, though the Plaintiff alleges that Ms. German facilitated the appointment of the Trustee, she fails to state any facts which suggest that Ms. German knew, when she selected the Trustee, that the Trustee would fail to properly administer any asset or would fail to account for such assets, let alone that Ms. German participated in the Trustee's alleged mismanagement of the Debtor's estate after the Trustee's appointment.

Because, as it relates to the "knowing participation" element of the aiding and abetting claim, the Complaint merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 557), the Debtor has "not nudged [the claim] across the line from conceivable to plausible." *Khalik*, 671 F.3d 1188, 1191.  As such, the Debtor has failed to state a claim upon which relief may be granted.  The Court must dismiss the Fourth Claim.

### VII.     The Court Denies the Request to Amend the Complaint.

At the end of her Response to the Motion to Dismiss, the Debtor interposes a request, stating:  "[T]o the extent the Court identifies any pleading deficiency, Plaintiffs respectfully request **leave to amend** under Fed. R. Civ. P. 15(a)(2), which leave 'should [be] freely give[n] when justice so requires.'"[65]

Fed. R. Civ. P. 15(a), made applicable to these proceedings by Fed. R. Bankr. P. 7015, provides that leave to amend "shall be freely given when justice so requires."  In applying the Rule, the Supreme Court has directed that "[i]n the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," a court should grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[64]     Docket No. 26 at 3.
[65]     Docket No. 26 at 8 (bolding and brackets in original).

While recognizing the right to amend, however, the Tenth Circuit Court of Appeals has emphasized "the importance of Fed. R. Civ. P. 7(b)" and has held that "normally a court need not grant leave to amend when a party fails to file a formal motion."[66]  *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999).  *See also Burnett*, 706 F.3d at 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave.").  In affirming a district court's denial of a request to amend a deficient complaint where the plaintiff tried to excuse his failure seek leave to amend on the ground that he was awaiting a ruling on the motion to dismiss before trying to cure any possible defects, the Tenth Circuit stated:

> [C]ases are not to be litigated piecemeal.  The court should not have to address repeated "improvements" to the complaint.  When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time."

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020).  The Tenth Circuit, therefore, has affirmed that "a court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm."  *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (brackets in original).  *See also Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) (affirming dismissal and denial of request to amend, made in response to motion to dismiss without formal motion, and noting that such request, unsupported by argument or a proposed amendment, was insufficient to notify the court or opposing counsel of the grounds for amendment).

In this case, despite having been afforded notice of the deficiencies of her pleading four months ago (when Ms. German filed the Motion to Dismiss), the Debtor did not file a motion to amend the claims in the Complaint as required by Fed. R. Civ. P. 7(b)(1) and 15(a)(2), nor a proposed amended complaint, nor did she otherwise identify any grounds for amendment or any new factual allegations that would correct the infirmities of her Complaint.[67]  Instead, the Debtor chose to litigate the Motion to Dismiss on the merits, filing the Response opposing the Motion to Dismiss as well as the Sur-Reply, requesting to amend the Complaint only if the Court agreed that all or some of the claims were deficient.  And, the Debtor makes such request without offering any reason why, prior to the time she filed the Response, she could not amend the Complaint.

Requesting leave to amend only after the parties have fully briefed and the Court has adjudicated a motion to dismiss represents a "wait-and-see approach" which

---

[66]     Fed. R. Civ. P. 7 is made applicable to this proceeding by Fed. R. Bankr. P. 7007.

[67]     The Amended Complaint proposed to add Robinson & Henry, P.C., Ms. German's law firm, as a defendant and purported to "preserve" all claims asserted in the Complaint, but did not purport to cure any deficiencies in the Complaint.

undermines judicial efficiency and is unduly prejudicial to Ms. German, who has spent time and resources preparing her Reply to the Response.  *See Meyer v. City of Marion, Kansas*, 776 F. Supp.3d 991 (D. Kan. 2025) (denying request to amend made in motion to dismiss) (citations omitted).  Further, allowing amendment at this stage of the case would result in undue delay.  *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (explaining that denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay and noting that courts "will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target'")); *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) (affirming dismissal and denial of request to amend made in response to motion to dismiss without formal motion).  For such reasons, the Court denies the Debtor's request to amend her Complaint to meet the deficiencies identified in this Order.

## VIII.   <u>Conclusion and Orders</u>.

For the reasons earlier stated, the Court grants in part, and denies in part, the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and

ORDERS:

1. The Debtor's First Claim is DISMISSED to the extent such claim is predicated on breach of fiduciary duty, but is NOT DISMISSED to the extent such claim is predicated on negligence.

2. The Debtor's Fourth Claim is DISMISSED.

The Court FURTHER ORDERS that Ms. German shall file an answer to the Complaint by in accordance with the applicable Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure.

Dated this 30th day of December, 2025.

BY THE COURT:

*Thomas B. McNamara*

Thomas B. McNamara,
United States Bankruptcy Judge