**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>SHERRY ANN MCGANN,<br><br>Debtor. | Bankruptcy Case No. 20-18118 TBM<br>Chapter 7 |
| SHERRY ANN MCGANN and<br>CELESTIAL PROPERTIES LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ELIZABETH GERMAN,<br><br>Defendant. | Adv. Pro. No. 25-1199 TBM |

# ORDER ON MOTION TO WITHDRAW AND RELATED REQUESTS

## I. Introduction.

In 2019, Sherry Ann McGann (the "Debtor"), acting through her legal counsel, Elizabeth German ("Ms. German") of the Robinson Henry, P.C. law firm ("Robinson Henry"), filed for protection under Chapter 11 of the Bankruptcy Code[1] thereby initiating the case captioned: *In re McGann*, Case No. 19-18971 (Bankr. D. Colo.) (the "Chapter 11 Case").[2] Ms. German and Robinson Henry represented the Debtor throughout the entire Chapter 11 Case. A creditor requested dismissal of the Chapter 11 Case. The Debtor did not oppose dismissal. Accordingly, the Court dismissed the Chapter 11 Case about a year after it was filed. In late 2020, about three months after such dismissal, the Debtor (again represented by Ms. German and Robinson Henry) filed a new bankruptcy proceeding seeking liquidation under Chapter 7 of the Bankruptcy Code in the case captioned: *In re McGann*, Case No. 20-18118 (Bankr. D. Colo.) (the "Chapter 7 Case"). Jeanne Y. Jagow was appointed as the Chapter 7 Trustee (the

[1] All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

[2] Chapter 11 Case Docket No. 1. The Court uses the convention "Chapter 11 Case Docket No. ___" to refer to documents filed in the CM/ECF system in the Chapter 11 Case: In re McGann, Bankr. Case No. 19-18971 (Bankr. D. Colo.).

"Trustee") to liquidate the Debtor's estate. Ms. German and Robinson Henry represented the Debtor for the first thirteen months of the Chapter 7 Case. Ms. German and Robinson Henry sought authorization to withdraw as the Debtor's attorney. The Debtor did not oppose their departure. So, the Court authorized Ms. German and Robinson Henry to withdraw from representing the Debtor.

Meanwhile, the Debtor has become extremely displeased with the progression of her Chapter 7 Case, including the Trustee's liquidation of real property owned by the bankruptcy estate. About a year ago, on July 17, 2025, the Debtor and a related entity, Celestial Properties, LLC ("Celestial Properties") (together with the Debtor, the "Plaintiffs") initiated this Adversary Proceeding against the Debtor's former lawyer (Ms. German) and others: *Celestial Properties LLC et al. v. German et al. (In re McGann)*, Adv. Pro. No. 25-1199 (Bankr. D. Colo.). In her initial Complaint, the Debtor and Celestial Properties (acting *pro* se) accused Ms. German of legal malpractice and other malfeasance in connection with both the Chapter 11 Case and the Chapter 7 Case. The parties engaged in pre-trial litigation. Later, the Plaintiffs hired legal counsel: John A. Cimino ("Mr. Cimino"). Mr. Cimino assisted the Plaintiffs in the Pretrial Scheduling Conference. Subsequently, the Court issued a Scheduling Order setting the Adversary Proceeding for trial on December 7, 2026, and also establishing a series of typical pre-trial deadlines.

Mr. Cimino did not serve the Plaintiffs long; he withdrew as counsel for the Plaintiffs (with the Plaintiffs' acquiescence) after about a month. Then, the Plaintiffs hired another lawyer, S. Birk Baumgartner ("Mr. Baumgartner") of Baumgartner Law, LLC, to continue to sue her former lawyer, Ms. German, and Ms. German's law firm. On April 24, 2026, the Plaintiffs, acting through new legal counsel, filed a "First Amended Complaint and Demand for Jury Trial" (the "Second Amended Complaint"),[3] which purported to readd Celestial Properties (which had been dismissed) as a plaintiff (together with the Debtor, the "Plaintiffs") and also add Robinson Henry as a defendant.

The trial (and various pre-trial deadlines) are fast-approaching. However, the Debtor has run into trouble with her most-recent lawyer (Mr. Baumgartner) and accused him of malfeasance in pursuing the claims of malfeasance against Ms. German and Robinson Henry.

All of which leads to the current controversies, which the Court now identifies and adjudicates:

[3] Docket No. 79. Unless otherwise indicated, the Court will refer to documents from the CM/ECF docket for this Adversary Proceeding using the convention: "Docket No. ___." Although the Debtor styled the pleading as her "First Amended Complaint and Demand for Jury Demand," that was a misnomer because the Debtor filed her "[First] Amended Complaint" long ago. (Docket No. 16.) So, the Court refers to the new "First Amended Complaint and Demand for Jury Trial" more accurately as the "Second Amended Complaint."

- Mr. Baumgartner (and Baumgartner Law, LLC) filed a "Motion to Withdraw as Counsel for All Debtors" (the "Motion to Withdraw");[4]

- The Debtor responded with "Plaintiff Sherry Ann McGann's Substantiated Objection to Motion and Notice to Withdraw (Dkt. Nos. 108 and 108-1), Request for Hearing, Protective Conditions, Related Accountability Relief, and Consideration of an Order to Show Cause" (the "Objection to Motion to Withdraw").[5] The Objection to Motion to Withdraw is more than a simple objection. It is packed with dozens of other requests for relief advanced by the Debtor including relating to the trial and pre-trial deadlines; and

- The Debtor filed "Plaintiff Sherry Ann McGann's Emergency Verified Motion to Correct Material Factual Misapprehensions in Docket No. 113, for Limited Reconsideration of the Denial of Prospective Relief, to Compel Counsel and Expert-Status Disclosures, and for a Remote Evidentiary Hearing" (the "Motion to Correct").[6]

For the reasons set forth below, the Court grants the Motion to Withdraw. The Court also modifies the Scheduling Order (including the trial date) to allow the Plaintiffs an opportunity to retain another set of lawyers. However, the Court denies the myriad other relief requested by the Debtor in the Objection to Motion to Withdraw and Motion to Correct (and other related recent motions).

## II. <u>Jurisdiction</u>.

This Court has general bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334(b) and may decide the Motion to Withdraw, Objection to Motion to Withdraw, and Motion to Correct. None of the parties has contested the Court's jurisdiction to adjudicate such matters.[7]

---

[4] Docket No. 108. The Motion to Withdraw is a bit of a misnomer. Mr. Baumgartner referred to "All Debtors." But, there is only one Debtor: Ms. McGann. The Court presumes that Mr. Baumgartner meant to refer to "all Plaintiffs" which means the Debtor and Celestial Properties.

[5] Docket No. 111.

[6] Docket No. 114.

[7] Notwithstanding, there may be jurisdictional issues with the Court deciding the Adversary Proceeding on the merits. For example, as currently framed, a non-Debtor (Celestial Properties) is apparently attempting to invoke the bankruptcy system to assert state-law claims against other non-Debtors: Ms. German and Robinson Henry. Jurisdictionally, Celestial Properties has not explained how it may utilize the bankruptcy system in such endeavor.

## III. Procedural Background.

### A. The Debtor's Bankruptcy Cases.[8]

#### 1. The Debtor's Chapter 11 Bankruptcy Case.

The Debtor, acting through legal counsel, Ms. German and Robison Henry, filed her voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on October 17, 2019, commencing the Chapter 11 Case: *In re McGann*, Case No. 19-18971 (Bankr. D. Colo.). Ms. German and Robinson Henry represented the Debtor during the entire Chapter 11 Case. The Debtor failed to file a reorganization plan. A creditor requested dismissal under Section 1112(b).[9] The Debtor did not oppose such relief.[10] After the Chapter 11 Case had been pending almost a year, on September 1, 2020, the Court entered an Order dismissing the Chapter 11 Case.[11] The Court closed the Chapter 11 Case on November 3, 2020.[12]

#### 2. The Debtor's Chapter 7 Bankruptcy Case.

On December 22, 2020, the Debtor (again with Ms. German's assistance) filed a new voluntary Petition for relief under Chapter 7 of the Bankruptcy Code commencing the Chapter 7 Case: *In re McGann*, Bankr. Case No. 20-18118 (Bankr. D. Colo.).[13] Jeanne Y. Jagow was appointed as the Chapter 7 Trustee for the liquidation of the Plaintiff's bankruptcy estate.[14] A few months after the bankruptcy filing, on March 21, 2021, the Court entered an "Order of Discharge" in the Chapter 7 Case, discharging the Debtor's dischargeable debts.[15]

Ms. German represented the Debtor for the first 13 months of the Chapter 7 Case. On January 24, 2022, Ms. German filed a "Motion to Withdraw with Notice."[16] Ms. German cited "a fundamental disagreement on how to proceed with this case."[17] The Debtor did not oppose Ms. German's withdrawal. Accordingly, on February 7, 2022, the Court entered an Order authorizing Ms. German to withdraw as legal counsel for the Debtor in the Chapter 7 Case.[18] Since such time, the Debtor has proceeded mostly without legal counsel in the Chapter 7 Case; but later, she hired various sets of

---

[8] The Court takes judicial notice of the dockets of the Chapter 11 Case and Chapter 7 Case for purposes of describing the current procedural status. *See St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket).

[9] Chapter 11 Case Docket No. 170.

[10] Chapter 11 Case Docket No. 173.

[11] Chapter 11 Case Docket No. 176

[12] Chapter 11 Case Docket No. 185.

[13] Chapter 7 Case Docket No. 1. The Court uses the convention "Chapter 7 Case Docket No. ___" to refer to documents filed in the CM/ECF system in the Chapter 7 Case: *In re McGann*, Bankr. Case No. 20-18118 (Bankr. D. Colo.).

[14] Chapter 7 Case Docket No. 5.

[15] Chapter 7 Case Docket No. 63.

[16] Chapter 7 Case Docket No. 119.

[17] *Id.* at 1.

[18] Chapter 7 Case Docket No. 134.

lawyers. The Chapter 7 Case is pending and has been the subject of extensive litigation.

**B. <u>This Adversary Proceeding</u>.**

**1. <u>The Complaint</u>.**

On July 17, 2025, acting *pro se*, the Debtor individually, and purportedly on behalf of Celestial Properties filed a "Complaint for Damages, Equitable Relief, an Declaratory Release of Estate Interests" (the "Complaint").[19] In the Complaint, the Debtor listed the plaintiffs as: (1) "Celestial Properties, a Colorado limited liability company, by and through its sole member Sherry Ann McGann"; and (2) "Sherry A. McGann, individually."[20] Further, she identified the defendants as: (1) "Elizabeth German, Esq."; (2) "Jeanne Y. Jagow"; and (3) "David Miller" ("Mr. Miller").[21] The Debtor also mentioned Ms. German's affiliation with Robinson Henry.

Factually, in the Complaint, the Debtor accused Ms. German of "professional misconduct" in filing the Chapter 7 Case and throughout Ms. German's participation in the Chapter 7 Case. The Debtor referred to "more than 700 filings, supported by e-mails, court transcripts, and corroborating exhibits" she assembled over years. Among other things, the Debtor asserted that Ms. German: provided "legally flawed advice that directly caused client economic harm"; "misrepresented the effect of changing the Chapter 11 to Chapter 7"; "abandoned the Plaintiff [the Debtor]"; "fail[ed] to file a Chapter 11 plan"; gave "false advice to file a Chapter 7"; was involved in a "constructive conflict in trustee selection"; and engaged in other misconduct. In the Complaint, the Debtor characterized the Plaintiffs claims for relief as: (1) "Legal Malpractice/Breach of Fiduciary Duty," against Ms. German; (2) "Breach of Fiduciary Duty," against the Trustee and Mr. Miller; (3) "Declaratory Relief – Abandonment of Celestial Properties LLC and Improper Retention of Estate Claims," presumably against the Trustee; and (4) "Aiding and Abetting Breach of Fiduciary Duty" (the "Fourth Claim") against Mr. Miller and Ms. German.[22]

**2. <u>Dismissal of the Trustee and David Miller</u>.**

Meanwhile, David Miller submitted a "Motion to Dismiss."[23] The Trustee joined.[24] Apparently in response, the Debtor filed a "Notice of Dismissal Without Prejudice of Defendants Jeanne Y. Jagow and David M. Miller."[25] Accordingly, the Trustee and Mr.

---

19 Docket No. 1. The Court uses the convention "Docket No. __" to refer to documents filed in the CM/ECF system in this Adversary Proceeding: *Celestial Properties LLC et al. v. Elizabeth German, Esq. et al. (In re McGann),* Adv. Pro. No. 25-1199 (Bankr. D. Colo.)

20 *Id*. at 1.

21 *Id.*

22 *Id*. at 8-9.

23 Docket No. 12.

24 Docket No. 13.

25 Docket No. 15.

Miller have been dismissed as defendants in this Adversary Proceeding[26] leaving Ms. German as the sole remaining defendant at that stage.

### 3. <u>The Amended Complaint</u>.

Without awaiting an Order addressing either the Motion for Authority or the Motion for Extension, the Debtor, acting *pro* se, proceeded to file an "Amended Complaint" (the "Amended Complaint")[27] on behalf of herself and supposedly for Celestial Properties. In the Amended Complaint, the Debtor dropped the Trustee and Mr. Miller as named defendants but listed "Robinson & Henry, P.C." (Ms. German's law firm) as another defendant in the Adversary Proceeding. The Debtor did not identify any new claims in the Amended Complaint but instead seemed to reference the claims in the original Complaint. The Amended Complaint also referenced the "inclusion of Robinson Henry."

Thereafter, the Court entered an "Order Regarding Further Filings in this Adversary Proceeding" (the "Further Filings Order").[28] The Court accepted the dismissal of the claims against the Trustee and Mr. Miller, but denied the request to file the Amended Complaint pending determination as to the Debtor's ability to file documents for Celestial Properties.[29] The Court also ordered "the Debtor may make no further filings on behalf of Celestial [Properties] until and unless the Court determines that she has authority to do so" and warned that any non-compliant documents could be stricken from the record.[30]

### 4. <u>Dismissal of Celestial Properties</u>.

Meanwhile, in the Chapter 7 Case, the Debtor filed a "Motion of Sherry McGann, as Sole Member of Celestial Properties, LLC, and Acting on Behalf of Celestial Properties, LLC, Requesting an Order of Recusal of Judge Thomas B. McNamara and Abandonment of the Membership Interest in Celestial Properties, LLC and All Claims Held by Celestial Properties, LLC That Are Considered Property of the Bankruptcy Estate" (the "Motion to Abandon").[31] The Trustee filed an "Objection to Debtor's Motion for Abandonment of Membership Interest in Celestial Properties, LLC" (the "Objection to Motion to Abandon").[32] Therefore, the question of whether the Debtor's pre-petition membership interest in Celestial Properties would remain property of the bankruptcy estate remained at issue. Because control of Celestial Properties and the Debtor's ability to act on its behalf had to be determined before this Adversary Proceeding could proceed with respect to Celestial Properties, the Court deferred ruling on the Motion for Authority and the Motion for Extension.

[26] Docket No. 17.
[27] Docket No. 16.
[28] Docket No. 18.
[29] *Id*.
[30] *Id*.
[31] Chapter 7 Case Docket No. 694.
[32] Chapter 7 Case Docket No. 709.

Later, the Trustee withdrew her Objection to Motion to Abandon.[33] Therefore, on October 14, 2025, the Court issued an "Order to Abandon Membership Interest in Celestial Properties, LLC" in the Chapter 7 Case (the "Abandonment Order").[34] As set forth in the Abandonment Order, the Court ordered that "the [Chapter 7] Trustee shall abandon the Estate's membership interest in Celestial Properties, LLC. Ownership of the Estate's membership interest in Celestial Properties, LLC hereby reverts to the Debtor."[35]

Given the foregoing, the Court determined that the Debtor, who now had regained the right to control Celestial Properties, had the authority to act on behalf of Celestial Properties in this Adversary Proceeding.

Importantly in the context of the Motion to Withdraw, the Court provided an extended period of time for Celestial Properties to retain legal counsel in the Adversary Proceeding because Celestial Properties is a limited liability company which can only proceed as a litigant if it has legal counsel. L.B.R. 9010-1(e). See also *Flora Constr. Co. v. Fireman's Fund Ins. Co*., 307 F.2d 413 (10th Cir. 1962), cert. denied, 371 U.S. 950, 83 S. Ct. 505, reh'g denied, 373 U.S. 919, 835 S. Ct. 1296 (1963) (holding that corporation or other similar legal entity may not appear pro se (through officers or employees of the entity), but must be represented by an attorney). First, the Court granted an extension of time for Celestial Properties to retain legal counsel to November 7, 2025.[36] Then, the Court granted another extension through November 17, 2025.[37] The Court ordered:

> Celestial Properties shall have up to and including November 17, 2025, by which to retain counsel to represent it in its prosecution of the Complaint. If counsel authorized to practice in this Court has not entered an appearance on behalf of Celestial Properties by such date, Celestial Properties will be dismissed as a Plaintiff without further notice.

Celestial Properties failed to retain legal counsel within the extended deadline. So, on November 18, 2025, the Court dismissed Celestial Properties as a plaintiff from this Adversary Proceeding.[38]

**5. <u>The Motion to Dismiss</u>.**

At that point, the original Complaint was the operative pleading. The Trustee and David Miller had been dismissed as defendants. Only the First Claim and Fourth Claim

---

33 Chapter 7 Case Docket No. 758.
34 Chapter 7 Case Docket No. 759.
35 *Id*. at 2.
36 Docket No. 33.
37 Docket No. 36.
38 Docket No. 38.

remained pending as against Ms. German. Further, the only plaintiff in the Adversary Proceeding was the Debtor, who was appearing *pro se*. Again, Celestial Properties had been dismissed.

On August 25, 2025, Ms. German responded to the Complaint by filing a "Motion to Dismiss" (the "Motion to Dismiss")[39] asserting that the Complaint must be dismissed. She argued that the statute of limitations had run on the First Claim and the Debtor's Fourth Claim failed to state a claim upon which relief can be granted for aiding and abetting breach of fiduciary duty. Ms. German also asserted that the Debtor's First Claim, though styled as a claim for "Legal Malpractice/Breach of Fiduciary Duty" was really just a single claim for legal malpractice based upon alleged negligence.

On August 29, 2025, the Debtor filed a "Response in Opposition" (the "Response") to the Motion to Dismiss.[40] She disputed that the Complaint should be dismissed. Thereafter, Ms. German filed a "Reply in Support of Motion to Dismiss" (the "Reply")[41] and the Debtor filed a "Motion for Leave to File Sur-Reply to Defendant's Reply in Support of Motion to Dismiss" (the "Motion for Leave to File")[42] to which she attached a proposed "Sur-Reply." The Court granted the Motion for Leave to File and accepted the Sur-Reply.[43]

After all the foregoing briefing, on December 30, 2025, the Court issued its "Order Granting, In Part, and Denying, In Part, Motion to Dismiss" (the "Dismissal Order").[44] Ultimately, the Court determined that:

> The Debtor's First Claim [Legal Malpractice / Breach of Fiduciary Duty] is DISMISSED to the extent such claim is predicated on breach of fiduciary duty, but is NOT DISMISSED to the extent such claim is predicated on negligence.
>
> The Debtor's Fourth Claim [Aiding and Abetting Breach of Fiduciary Duty] is DISMISSED.

---

[39] Docket No. 25.

[40] Docket No. 26. Notwithstanding the Further Filings Order, the Debtor filed the Response on behalf of both herself and, purportedly, on behalf of Celestial Properties. Since Celestial Properties has been dismissed as a plaintiff, the Court construes the Response, and further filings in this Adversary Proceeding as applicable to the Debtor in her individual capacity only.

[41] Docket No. 31.

[42] Docket No. 32.

[43] Docket Nos. 41 and 42

[44] Docket No. 43.

### 6. <u>The Debtor's Retention of First Legal Counsel in Adversary Proceeding</u>.

On or about February 19, 2026, the Debtor retained a new lawyer, Mr. Cimino, to assist her.[45] Mr. Cimino entered his appearance and proceeded to represent the Debtor at the "Pretrial Scheduling Conference" (the "Conference").[46] During the Conference, Mr. Cimino confirmed that only one claim remained in the case as against the Defendant [Ms. German] (*i.e.*, professional negligence), and reported that the Debtor intended to file a motion to amend the Complaint to clarify and simplify the case.[47] Mr. Cimino provided input to the Court on the proposed schedule for pretrial deadlines (including the designation of experts and submission of expert reports).[48]

### 7. <u>The Scheduling Order</u>.

On February 20, 2026, the Court entered its "Scheduling Order Under Fed. R. Civ. P. 16(b) and Fed. R. Bankr. P. 7016" (the "Scheduling Order").[49] With the parties' input, the Court set the Adversary Proceeding for a three-day trial on December 7, 2026. And, the Court set a series of pretrial deadlines too. Among other things, in the Scheduling Order, the Court ordered:

> 4. <u>Deadline for Expert Disclosures</u>.
>
> The Parties shall be limited to a total of two (2) expert witnesses per side. Parties must designate experts pursuant to Fed. R. Civ. P. 26(a)(2)(A) by **August 18, 2026.** Disclosures and written reports required by Fed. R. Civ. P. 26(a)(2)(B) must be made and exchanged by **August 18, 2026**. Designation of counter or rebuttal experts, if any,intended solely to contradict or rebut evidence on the same subject matter identified by another party under Fed. R. Civ. P. 26(a)(2)(B) must be made by **September 15, 2026.** Disclosures and written reports for such rebuttal or counter experts must be made and exchanged by **September 15, 2026.**
>
> 5. <u>Deadline for Fact and Expert Discovery</u>.
>
> All fact and expert discovery must be completed by **November 2, 2026.** "Completed" means that all depositions

45 Docket No. 52.
46 Docket Nos. 52 and 54.
47 Docket No. 54.
48 *Id.*
49 Docket No. 55.

are concluded and that responses to written discovery are due by the discovery completion date. . . .

7. Amended Pleadings and Joinder Deadline.

Motions to amend or supplement pleadings or to join additional parties must be filed by **March 13, 2026.** This deadline pertains to timing only, parties must comply with Fed. R. Civ. P. 15(a).

8. Dispositive Motions.

Dispositive motions, if any, must be filed by **November 16, 2026.** All motions for summary judgment and responses shall comply with L.B.R. 7056-1. L.B.R. 7056-1 also shall govern the timing for any responses to a summary judgment motion. The Court cautions the Parties that if either side intends to file a dispositive motion, that Party should do so earlier in the case rather than later. If such a Motion were filed at or near the dispositive motion deadline, the Court might be unable to consider it in advance of the trial. If that were to occur, the Court would use such submissions as trial briefs.

9. Witnesses and Exhibits.

The disclosures required by Fed. R. Civ. P. 26(a)(3) must be made in writing by **November 16, 2026** . . . . In addition to exchanging pre-marked exhibits, counsel or the parties themselves, if not represented by counsel, shall prepare a list of exhibits and a list of witnesses to be called at trial, in substantial conformity with L.B.F. 9070-1.1, and shall file only their lists with the Court, by **November 16, 2026.** Written objections directed to the exhibits must be filed and served on counsel for the opposing party or any party not represented by counsel by **November 23, 2026**, otherwise all objections except as to relevancy are waived. The Court strongly encourages the parties to observe and comply with the disclosure deadlines. A party's failure to disclose witnesses or to disclose and exchange exhibits in a timely manner may result in that party's being prohibited from calling the undisclosed witness or introducing the undisclosed exhibits at the Trial.

### 8. <u>The Debtor's Retention of Second Legal Counsel in Adversary Proceeding and Second Amended Complaint</u>.

A bit more litigation ensued over discovery.[50] Mr. Cimino's role as advocate for the Debtor was short-lived. Mr. Cimino filed a "Motion to Withdraw as Counsel for Plaintiff," in which he stated that the Debtor had retained Mr. Baumgartner to represent her.[51] The Court granted the Motion to Withdraw.[52] In Mr. Cimino's stead, on March 26, 2026, the Debtor engaged a second lawyer: Mr. Baumgartner of Baumgartner Law, LLC.[53] With the assistance of her newest lawyer, the Debtor sought permission to file a second amended complaint, which request the Court granted.[54]

On April 24, 2026, the Debtor, through Mr. Baumgartner, filed the "Second Amended Complaint."[55] In the caption of the Second Amended Complaint, the Debtor listed the plaintiffs as: (1) "Sherry Ann McGann"; and (2) "Celestial Properties, LLC." Notwithstanding, the text of the Second Amended Complaint (except Paragraph 5) refers only to a single "Plaintiff." Further, the Debtor identified the defendants as: (1) "Elizabeth German"; and (2) "Robinson Henry".

Factually, the Second Amended Complaint, the Debtor and Celestial Properties accused Ms. German and Robinson Henry of professional misconduct. Among other things, the Debtor asserted that: "German did not disclose her absolute lack of Chapter 11 experience"; Ms. German "intentionally misrepresented herself and the value and reliability of her services"; Ms. German did not file an employment application in the Chapter 11 Case; "Robinson & Henry failed to supervise, correct, or intervene in German's conduct"; Ms. German and Robinson Henry "breached" their duties to the Debtor; Ms. German provided "improper or uninformed legal advice"; Ms. German failed "to protect or preserve assets and claims"; Ms. German failed "to adequately investigate and evaluate the feasibility of Chapter 11 reorganization"; Ms. German failed "to disclose material risks and consequences of converting to Chapter 7"; and Ms. German "intentionally misrepresent[ed] herself and her experience." Based on the foregoing alleged malfeasance, the Plaintiffs characterized their three claims for relief in the Second Amended Complaint as: (1) "Legal Malpractice (Negligence Against both Defendants"; (2) "Negligent Supervision / Firm Liability"; and (3) "Breach of Fiduciary Duty (Against both Defendants)."[56] More litigation ensued.

---

[50] Docket Nos. 49, 51, and 64.
[51] Docket No. 69.
[52] Docket No. 74.
[53] Docket No. 67.
[54] Docket Nos. 68 and 76.
[55] Docket No. 79. The document was titled: "First Amended Complaint and Demand for Jury Trial," which was a misnomer because it was the second amended complaint presented by the Debtor.
[56] *Id*. at 7-10.

**<u>The Stay Motion and Second Stay Motion</u>.**

On August 6, 2026, the Debtor, purporting to act *pro se*, filed a pair of new motions: "Plaintiff Sherry Ann McGann's Emergency Motion for a Limited Protective Stay, to Vacate and Reset Case-Management Deadlines, for an Expedited Counsel-Status Conference, and to Preserve Celestial Properties, LLC Pending Substitute Counsel" (the "Stay Motion")[57]; and "Plaintiff Sherry Ann McGann's Separate Motion for Expedited Consideration and Interim Administrative Stay" (the "Second Stay Motion").[58] In the Stay Motion, the Debtor advised that her "current counsel", Mr. Baumgartner, "remained of record." However, she went on to criticize Mr. Baumgartner's performance (in pursuing the malpractice claims against her former counsel, Ms. German).

The Debtor recited that "McGann has received no reliable expert-retention."[59] In other words, notwithstanding that the Debtor herself filed this Adversary Proceeding well over a year ago, on July 17, 2025, she still has not retained an expert who would opine that Ms. German engaged in legal malpractice. The balance of the Stay Motion was mostly a plea to delay the prosecution of this Adversary Proceeding, because the Debtor and Mr. Baumgartner have failed to find an expert witness and because the Debtor and Mr. Baumgartner are at an impasse. The Debtor asked to stay or delay all remaining pretrial deadlines (including the August 18, 2026 deadline for expert designations and expert reports) and the trial indefinitely to allow her (and Celestial Properties) to retain a third set of legal counsel in this Adversary Proceeding against her prior legal counsel, Ms. German. The Debtor seemed to ask for the same type of relief in the Second Stay Motion.

The Defendants opposed the Stay Motion and Second Stay Motion.[60] The Defendants contended that the Debtor's submissions of the Stay Motion and Second Stay Motion were improper since, at the time of such submissions, the Debtor was represented by legal counsel. The Defendants also argued that an extended indefinite stay would be prejudicial to the Defendants because the pending "professional malpractice claims against Defendants continue to damage their reputation while Plaintiff continues to delay these proceedings by attempting to locate a viable standard of care expert who she has been unable to retain for more than a year."[61] Thereafter, the Debtor filed "Plaintiff Sherry Ann McGann's Reply in Support of Docket No. 103 and Notice of Intervening Withdrawal Filings."[62]

On August 24, 2026, the Court issued an "Order on Various Motions" (the "Order Modifying Schedule"),[63] deciding the Stay Motion and Second Stay Motion. The Court ordered:

---

[57] Docket No. 103.
[58] Docket No. 105.
[59] *Id*. at 9.
[60] Docket No. 107.
[61] *Id*. at 3.
[62] Docket No. 110.
[63] Docket No. 113.

> [T]he Court has serious doubts that the Debtor has met her burden to modify the Scheduling Order to permit her more time to designate an expert witness and provide the required expert report. And, the Court is concerned with prejudice to the Defendants. However, in the exercise of its discretion, the Court will modify the Scheduling Order so as to permit the Debtor even more time to find an expert witness to opine on the malpractice issues.
>
> Paragraph 4 of the Scheduling Order is modified as follows:
>
> > 4. Deadline for Expert Disclosures.
> >
> > The Parties shall be limited to a total of two (2) expert witnesses per side. Parties must designate experts pursuant to Fed. R. Civ. P. 26(a)(2)(A) by **September 18, 2026**. Disclosures and written reports required by Fed. R. Civ. P. 26(a)(2)(B) must be made and exchanged by **September 18, 2026**. Designation of counter or rebuttal experts, if any, intended solely to contradict or rebut evidence on the same subject matter identified by another party under Fed. R. Civ. P. 26(a)(2)(B) must be made by **October 15, 2026**. Disclosures and written reports for such rebuttal or counter experts must be made and exchanged by **October 15, 2026**.
>
> With respect to the Debtor's requests for a general and indefinite stay of all other pretrial deadlines and vacation of the trial, the Court respectfully denies such requests. Whilst the Debtor is apparently in the throes of yet another dispute with another lawyer (Mr. Baumgartner this time), the Debtor has known about the issues in her lawyer-client relationship for well over a month by her own admission. She has had sufficient time to search for and secure substitute counsel. And, if the Court grants the Motion to Withdraw, she may continue the elusive search for yet another lawyer. Or, she may decide to proceed *pro se* (as she has done many times in many matters including the first months of this Adversary Proceeding) with respect to prosecuting the claims brought

> in her own name.[64] None of that justifies a general stay or vacation of the trial date which is months away.

**9. <u>The Motion to Withdraw and Objection to Motion to Withdraw</u>.**

Meanwhile, on August 21, 2026, Mr. Baumgartner filed the "Motion to Withdraw").[65] As grounds, Mr. Baumgartner recited:

> 2. Undersigned Counsel and Debtors Sherry McGann and Celestial Properties, LLC have a present, unwaivable, and unresolvable conflict. Additionally, there has been a fundamental and irreversible breakdown in the attorney-client relationship.
>
> 3. The conflict of interest prevents attorney from providing any further legal services to clients.
>
> 4. Furthermore, continued representation will result in an unreasonable financial burden of the attorney.
>
> 5. Undersigned attorney is unable to provide more detail without violating confidentiality between attorney and client, and/or damaging the interests of the clients.[66]

Then, Ms. McGann filed the Objection to Motion to Withdraw.[67] More recently, the Debtor filed "Plaintiff Sherry Ann McGann's Objection to Docket No. 108 as Noticed at Docket No. 122 Opposition to Proposed Order at Docket No. 122-1 and Request for Remote Hearing and Interim Protection "(Docket No. 124, the "Second Objection to Motion to Withdraw"), which reiterates the Motion to Withdraw. In the Objection to Motion to Withdraw, the Debtor recited that "[s]he objects to immediate, unconditional, and prejudicial withdrawal after months of unresolved nonperformance . . . ."[68] The Debtor attached a myriad of documents to the Objection to Motion to Withdraw. Exhibit A-1 is a copy of a letter that the Debtor sent to Mr. Baumgartner on July 18, 2026 and titled: "Formal Pre-Arbitration Notice of Claim; Demand for Immediate Cure, $5,000 Reimbursement, Protective Action, Client File, Professional-Liability Insurance Information, Tolling, and Notice of Intent to Commence Arbitration" (the "Letter"). In the Letter, the Debtor accused Mr. Baumgartner of all manner of malfeasance and recognized a "breakdown in representation." The Debtor demanded that Mr. Baumgartner immediately pay her $5,000.00. She noted that the Letter was "a present claim for monetary and nonmonetary relief arising from professional services." She

---

64 As the Court has made clear, Ms. McGann cannot represent Celestial Properties, a corporate entity. Only counsel authorized to practice before this Court may do so. (*See* Docket Nos. 6, 18, 33, 36, and 38.)
65 Docket No. 108.
66 Docket No. 108 at 2.
67 Docket No. 111.
68 *Id*. at 1.

asserted a series of required actions to be taken by Mr. Baumgartner. And, the Debtor demanded that Mr. Baumgartner inform his malpractice insurance carrier about her claims against him.

Apparently, Mr. Baumgartner did not like the Letter. In Exhibit B to the Objection to Motion to Withdraw, the Debtor attached an e-mail from Mr. Baumgartner (dated July 20, 2026), wherein Mr. Baumgartner states:

> I have returned from my vacation last week, and just had an opportunity to review your communications. Unfortunately, your claims against me absolutely preclude me from any further actions taken as your attorney. I will forward this to my carrier, and they will be in touch with you.

Later, per Exhibit C to the Objection to Motion to Withdraw, Mr. Baumgartner sent Ms. McGann a "Disengagement Letter" (dated August 13, 2026) which stated, among other things:

> [A]fter additional evaluation of your claims, it does not appear that there is a reasonable likelihood of economic recovery . . . . Most importantly, the threat of lawsuit, complaint to attorney regulation, and a demand for monetary payment from the firm has caused an unwaivable and [un]resolvable conflict of interest. Therefore, as I explained many days ago, Baumgartner Law can no longer represent you and can take no further actions as your attorney, except to file Motions to Withdraw.

At the end of the Objection to Motion to Withdraw, and now again in the Second Objection to Motion to Withdraw, the Debtor asked the Court for at least 31 separate types of relief (at least as best as the Court understands and calculates). The Court refers the reader to the text of the Objection to Motion to Withdraw and the Second Motion to Withdraw for more insight.

**10. <u>The Motion for Correction</u>.**

Apparently displeased with the Court's Order Modifying Schedule, the Debtor filed the Motion to Correct on an "emergency" basis. The Motion to Correct is mostly an attack on the Court and the Order Modifying Schedule in which the Court granted the Debtor's request to extend the deadline for expert designations. The Debtor identified a myriad of supposed errors made by the Court. And, as best the Court calculates, the Motion to Correct asks the Court to "correct" or take actions with respect to dozens and dozens of matters raised by the Debtor (many involving Mr. Baumgartner). The Court refers the reader to the body of the Motion to Correct for a full listing of all the things the Debtor wants the Court to do. But, even though the lists go on for many, many pages,

toward the end of the Motion to Correct, the Debtor asked for the Court to issue an Order:

> - temporarily suspending every remaining Scheduling Order date, including September 18, October 15, November 2, November 16, November 23, November 24, December 1, and the December 7 trial, pending the hearing and further order;
> - vacating the December 7, 2026 trial and granting the originally requested 120-day protective stay from entry of the final order on this motion, subject to status reporting and further case-management order;
> - after the hearing and complete file transfer, setting a new schedule that allows not less than sixty days for the initial expert designation and complete report and sufficient later time for rebuttal, discovery, dispositive motions, pretrial submissions, and trial preparation;
> - permitting remote participation and imposing no in-person appearance on McGann through December 31, 2026 absent a specific emergency finding and reasonable notice;
> - imposing no arbitrary deadline requiring McGann to retain Colorado counsel, and permitting any qualified out-of-state attorney willing to enter to seek admission and request excusal of the local-counsel requirement for good cause; and

And also, the Debtor requested:

> Alternatively, if the Court declines the full 120-day stay, McGann requests the minimum relief necessary to make the expert extension real: immediate suspension of all expert, discovery, dispositive, pretrial, and trial dates; verified counsel disclosure and file transfer; a remote hearing on or after October 1; and a new expert deadline not earlier than sixty days after complete disclosure and transfer.

So, in at least some of the requests, the Debtor wants the Court to amend the Scheduling Order further, presumably under Fed. R. Civ. P. 16(b)(4) for “good cause and with the judge’s consent.” And, all, or most of the foregoing also were requested in

the Objection to Motion to Withdraw too.[69] Importantly, the Defendants did not submit a written objection to any of the foregoing requests to modify the Scheduling Order.

## IV. Legal Analysis.

### A. The Court Grants the Motion to Withdraw.

With respect to the Motion to Withdraw, Mr. Baumgartner wants to withdraw as counsel for the Plaintiffs. The Debtor does not want him to. The Defendants did not object to the Motion to Withdraw.

Whilst neither Mr. Baumgartner nor the Debtor cite law on the topic, the Court has substantial discretion when considering motions to withdraw. In analogous circumstances (in which multiple attorneys asked to withdraw), the Tenth Circuit explained:

> Appellant argues that the district court abused its discretion in allowing six successive attorneys to withdraw from representing him. "The grant or denial of an attorney's motion to withdraw in a civil case is a matter addressed to the discretion of the trial court and will be reversed on appeal only when the trial court has abused its discretion." *Washington v. Sherwin Real Estate, Inc.,* 694 F.2d 1081, 1087 (7th Cir. 1982). The record before us shows that in seeking to withdraw, at least three of appellant's former attorneys cited either irreconcilable differences with their client or their inability to advance his claims against NPS in good faith.

*Abell v. Babbitt*, 176 F.3d 488, at *2 (10th Cir. Apr. 14, 1999) (Table) (unpublished). Under such circumstances, the Tenth Circuit affirmed the grant of a motion to withdraw.

L.B.R. 9010-4 governs withdrawal of counsel in this Court and provides:

> (a) Withdrawal of Appearance. An attorney who has entered an appearance in a case or proceeding may seek to withdraw *on timely motion showing good cause.* Withdrawal is only effective upon Court order after proper service of the motion and notice. Motions filed on the eve of a hearing or deadline may not be deemed timely.

---

69 The Debtor since followed up with "Plaintiff Sherry Ann McGann's Separate Motion for Expedited Consideration and Temporary Administrated Suspension of September 18 and Dependent Deadlines Pending Counsel Status Determination" (Docket No. 125, the "New Expedited Motion"). The Debtor's filing of motions seeking the same relief already requested is unnecessary. The Court endeavors to address all filings promptly but is not always able to rule immediately given its caseload.

(1) Motion Requirements. A motion to withdraw must state the reasons for withdrawal unless the statement would violate the Colorado Rules of Professional Conduct. Good cause for withdrawal may include an assertion that the client has failed to make timely payments for post-petition services, provided that the attorney has completed the Basic Services, defined in L.B.R. 9010-1(c)(5). In addition, the Motion must include attorney's statements or advice to the client and/or the Court that:

(A) the attorney wishes to withdraw;

(B) the Court retains jurisdiction;

(C) the client's last known address and telephone number;

(D) the client has the burden of keeping the Court informed of the mailing address where notices, pleadings or other documents may be served;

(E) the client has the obligation either to prepare personally for any hearing or trial in a contested matter or adversary proceeding or to hire another attorney to prepare for any future hearing or trial;

(F) the client is responsible for complying with all Court orders and time limitations established by any applicable statute, rule, or the Rules;

(G) if another attorney is not hired, the client has the obligation to decide whether to respond to any motion that may be filed in the case after the withdrawal of the attorney, to file a timely response, and to respond to any Court orders requiring the client to respond;

(H) if the client fails or refuses to meet these burdens, the client may suffer sanctions, including default or dismissal of the pending contested matter, adversary proceeding, or the client's bankruptcy case in some circumstances;

(I) the dates of any pending matters and filing deadlines, including trials and hearings on

contested matters or adversary proceedings, and a warning that such matters will not be delayed or affected by the withdrawal of the attorney;

(J) service of process may be made upon the client at the client's address in the Court's database;

(K) where the withdrawing attorney's client is a corporation, partnership, or other legal entity, that such entity cannot appear without an attorney admitted to practice before this Court, and absent prompt appearance of the substitute attorney, pleadings, motions, and other documents may be stricken, and default judgment or other sanctions may be imposed against the entity including dismissal or conversion of its case if it is a debtor; and

(L) the client or other parties in interest have the right to object to the proposed withdrawal of the attorney by filing with the Court an objection to the attorney's motion to withdraw within seven days after filing of the notice.

(2) Notice Requirements. Any attorney seeking to withdraw as attorney of record must make a reasonable effort to give actual notice to the client. In addition, the attorney must give notice in accordance with L.B.R. 9013-1 to the client, United States Trustee, trustee, and to all parties who have entered an appearance in the case or proceeding. The notice must include notice of an opportunity to object and provide an objection deadline of no less than seven days from the date of filing of the motion. Both the motion and notice must be filed with the Court.

(Emphasis added.) So, L.B.R. 9010-4 provides for a good cause standard and various procedural protections. The Court determines that the Motion to Withdraw (along with the supplemental Notice[70]) materially complies with the procedural requirements of L.B.R. 9010-4. And, only the Debtor has objected.

The Colorado Rules of Professional Conduct also serve as a backdrop for attorney withdrawal. Colo. P.R.C. 1.16(b) provides:

---

70 Docket No. 122.

> [A] lawyer may withdraw from representing a client if: (1) withdrawal can be accomplished without material adverse effect on the interests of the client; (2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent; (3) the client has used the lawyer's services to perpetrate a crime or fraud; (4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement; (5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled; (6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or (7) other good cause for withdrawal exists.

Construing the identical provision in Utah, the Tenth Circuit Bankruptcy Appellate Panel recently concluded that: "an attorney can withdraw when (1) 'withdrawal can be accomplished without material adverse effect on the interests of the client' and (2) *for good cause notwithstanding an adverse material effect on the client*." *Rusk v. Beutler (In re Rusk)*, 2025 WL 1833855, at *5 (10th Cir BAP July 3, 2025) (unpublished) (emphasis added).

So, good cause is the key, notwithstanding that the Court should bear in mind possible prejudice to the client and the opposing party as well as the interests of the Court in administering justice without delay.

With respect to good cause for withdrawal, an ethical conflict of interest may justify withdrawal. "A serious breakdown in the attorney-client relationship" also serves as justification for withdrawal. *Gamez v. Country Cottage Care & Rehab.*, 377 F. Supp. 2d 1101, 1103 (D.N.M. 2005); *Rusk*, 2025 WL 1833855, at *5 ("good cause exists when there is antagonism between a lawyer and client [or] . . . there has been a total breakdown of the attorney-client relationship . . . ."). Withdrawal may be appropriate where "communication between [the lawyer and client" has broken down" and the client is "effectively operating in a *pro se* manner . . . ." *Trustees of the N.M. Pipe Trades Health & Welfare Tr. Fund v. Superior Mech. Contractors, Inc.*, 2011 WL 13282122, at *3 (D.N.M. Nov. 8, 2011). Furthermore, a client's threats to sue or grieve an attorney may serve as good cause to sever the relationship. *Njema v. Wells Fargo Bank, N.A.*, 2015 WL 12977504, *3-4 (D. Minn. Oct. 9, 2015) (unpublished) (finding good cause for withdrawal when the representation was "unreasonably difficult" after the client threatened his lawyer with a malpractice action and an ethics complaint).

The Motion to Withdraw and Objection to Motion to Withdraw demonstrate good cause for withdrawal in spades. Plainly, there is bitter antagonism between the Debtor and Mr. Baumgartner. The attorney-client relationship is totally broken. There is no further communication and the Debtor is effectively proceeding *pro se*. Furthermore,

the Debtor has threatened Mr. Baumgartner with demands in an arbitration and a complaint for attorney grievance. The Debtor also demanded money from Mr. Baumgartner and evidenced her intention to claim against Mr. Baumgartner's professional malpractice insurance carrier and thereby created conflicts of interest. In the end, the Court need not determine who was right, who was wrong, or where the fault lies as between the Debtor and Mr. Baumgartner in their failed attorney-client relationship; it is more than enough that the attorney-client relationship is totally broken and irreconcilable. Meanwhile, if the Debtor or Mr. Baumgartner wish to pursue claims against each other, likely they may do so; but not in this Court. This Court will have no part in it.

Given the foregoing, the Court must grant the Motion to Withdraw. Still, the Court is cognizant of issues of possible prejudice both to the Plaintiffs and the Defendants, as well as to the administration of justice. The main prejudice pertains to the schedule: the trial date and pre-trial deadlines under the Scheduling Order (as previously modified).

## B. <u>The Court Further Modifies the Scheduling Order</u>.

The Debtor has requested so many types of relief in the Objection to Motion to Withdraw and Motion to Correct that the Court has had a hard time definitively tallying everything that the Debtor wants the Court to do. But, it is plain that the Debtor wants for the Court to modify the Scheduling Order again to further protect her interests (or give her an advantage) on account of Mr. Baumgartner's withdrawal. And, again, the Court must consider the interests of the Defendants and justice too.

Fed. R. Civ. P. 16(b)(4) provides for modification of a scheduling order and states: "A schedule may be modified only for good cause and with the judge's consent." "Good cause" "focuses on the diligence of the party seeking to modify the scheduling order . . . ." *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (quoting *Colorado Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000) and *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.,* 986 F. Supp. 959, 980 (D. S.C. 1997), *aff'd,* 129 F.3d 116 (4th Cir.1997))). Put another way by the Tenth Circuit:

> "[T]rial courts have considerable discretion in determining what kind of showing satisfies this . . . good cause standard." 3 James Wm. Moore, Moore's Federal Practice - Civil § 16.14[1][b] (3d ed. 2019). In making this determination, "the factor on which courts are most likely to focus . . . is the relative diligence of the lawyer . . . who seek[s] the change." *Id.* "'[G]ood cause' is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Id.*

> "Another relevant consideration is possible prejudice to the party opposing the modification." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.").

*Tesone v. Empire Mktg. Strategies,* 942 F.3d 979, 988 (10th Cir. 2019).

Notably, the Debtor did not in either the Objection to Motion to Withdraw or the Motion to Correct offer any information about her diligence or the diligence of her counsel to meet the expert designation and report deadline in the Scheduling Order. Significantly, this Adversary Proceeding presents legal malpractice and negligence claims against Ms. German and Robinson Henry. Those Colorado state-law claims require the plaintiff to establish the applicable standard of care and the subsequent violation of the standard of care. Proving the Debtor's claims would almost certainly require an expert witness. That is because "[t]he measure of the duty owed by an attorney to his client is that he must employ that degree of skill, knowledge, and judgment ordinarily possessed by a member of the legal profession at the time the task is undertaken." *Boigegrain v. Gilbert*, 784 P.2d 849, 850 (Colo. App. 1989) (citations omitted). "[E]xcept in clear and palpable cases, expert testimony is necessary to establish the standards of acceptable professional conduct, deviation from which would constitute legal malpractice." *Id.* The Debtor and her pair of prior legal counsel should have known from the start of the case or even before (*see*, *e.g.,* Colo. Rev. Stat § 13-20-602) that expert testimony was the linchpin to the Adversary Proceeding. Indeed, the issue was raised by Ms. German very early in the Adversary Proceeding.[71] In any event, the Debtor seems to have been at odds with Mr. Baumgartner for almost two months. So, she should have been undertaking steps for the Plaintiffs to retain an expert and new legal counsel for a while.

Under the foregoing circumstances, the Court again (like the last time the Court modified the Scheduling Order), has serious doubts that the Debtor has met her burden to modify the Scheduling Order to change all the dates and deadlines. But, the Court has just granted the Motion to Withdraw. So, granting some additional time for the Plaintiffs to regroup and meet trial and pre-trial deadlines may be warranted.

Balancing the interests of the Plaintiffs and the Defendants (as well as the Court), the Court

[71] Docket No. 49.

ORDERS as follows:

Plaintiff Celestial Properties shall have through and including **November 9, 2026** within which to retain new legal counsel. The Debtor cannot represent Celestial Properties. Instead, because Celestial Properties is a limited liability company, it can only proceed as a litigant if it has legal counsel. L.B.R. 9010-1(e). See also *Flora Constr. Co.*, 307 F.2d 413 (holding that corporation or other similar legal entity may not appear pro se (through officers or employees of the entity), but must be represented by an attorney)). Accordingly, **if legal counsel has not entered an appearance for Celestial Properties by November 9, 2026, Celestial Properties will be dismissed as a Plaintiff with prejudice and without further notice.** Such dismissal with prejudice would be warranted since the Court already provided Celestial Properties multiple extensions of time to secure legal counsel and dismissed Celestial Properties previously, only for Celestial Properties to resurface in the Second Amended Complaint.

The Court encourages the Debtor to retain legal counsel as promptly as possible. However, the Court sets no deadline for the Debtor to engage legal counsel because the Debtor has the right to proceed *pro se* (for herself, but not Celestial Properties). She filed this Adversary Proceeding *pro se*. So, if the Debtor does not timely retain legal counsel and still wishes to prosecute this Adversary Proceeding, she must do so *pro se*.

The Scheduling Order is further modified as follows:

> 4. Deadline for Expert Disclosures.
>
> The Parties shall be limited to a total of two (2) expert witnesses per side. Parties must designate experts pursuant to Fed. R. Civ. P. 26(a)(2)(A) by **January 9, 2027**. Disclosures and written reports required by Fed. R. Civ. P. 26(a)(2)(B) must be made and exchanged by **January 9, 2027.** Designation of counter or rebuttal experts, if any, intended solely to contradict or rebut evidence on the same subject matter identified by another party under Fed. R. Civ. P. 26(a)(2)(B) must be made by **February 9, 2027.** Disclosures and written reports for such rebuttal or counter experts must be made and exchanged by **February 9, 2027**.
>
> 5. Deadline for Fact and Expert Discovery.
>
> All fact and expert discovery must be completed by **February 23, 2027.** “Completed” means that all depositions are concluded and that responses to written discovery are due by the discovery completion date.
>
> . . . .

8. Dispositive Motions.

Dispositive motions, if any, must be filed by **March 9, 2027.** All motions for summary judgment and responses shall comply with L.B.R. 7056-1. L.B.R. 7056-1 also shall govern the timing for any responses to a summary judgment motion. The Court cautions the Parties that if either side intends to file a dispositive motion, that Party should do so earlier in the case rather than later. If such a Motion were filed at or near the dispositive motion deadline, the Court might be unable to consider it in advance of the trial. If that were to occur, the Court would use such submissions as trial briefs.

9. Witnesses and Exhibits.

The disclosures required by Fed. R. Civ. P. 26(a)(3) must be made in writing by **March 9, 2027** . . . . In addition to exchanging pre-marked exhibits, counsel or the parties themselves, if not represented by counsel, shall prepare a list of exhibits and a list of witnesses to be called at trial, in substantial conformity with L.B.F. 9070-1.1, and shall file only their lists with the Court, by **March 9, 2027.** Written objections directed to the exhibits must be filed and served on counsel for the opposing party or any party not represented by counsel by **March 12, 2027**, otherwise all objections except as to relevancy are waived. The Court strongly encourages the parties to observe and comply with the disclosure deadlines. A party's failure to disclose witnesses or to disclose and exchange exhibits in a timely manner may result in that party's being prohibited from calling the undisclosed witness or introducing the undisclosed exhibits at the Trial.

. . . .

11. Stipulation Regarding the Admissibility of Exhibits.

The parties shall confer and prepare a list of exhibits which both parties agree are admissible at Trial. The Stipulation of Exhibits shall be filed with the Court by **March 15, 2027**.

12. Pretrial Statement.

The parties shall meet and confer and prepare and submit to the Court a pretrial statement setting forth the following:

a. A brief summary of the claims and defenses of each party;

b. A concise statement of stipulated and uncontested facts;

c. A concise statement of the issues that are in dispute;

d. A brief statement of all points of law relied upon, citing pertinent statutes, standards, cases and other authority; and

e. If applicable, an itemization of damages with a description of the basis for the calculation.

The Pretrial Statement shall be filed with the Court by **March 15, 2027**. If the parties are unable to reach an agreement as to any stipulated facts, a statement to that effect must be filed.

13. Final Pretrial Conference.

A final pretrial conference shall be held on **Tuesday, March 16, 2027, at 10:00 a.m.,** in Courtroom E, U.S. Custom House, 721 19th Street, Denver, Colorado. The Plaintiffs and Defendants, individually, or a representative of the Plaintiffs and Defendants, and their respective counsel may appear by telephone or in-person at the scheduled conference. Counsel/parties electing to appear by telephone shall dial either 1-833-568-8864 or 1-833-435-1820 immediately prior to the time of the scheduled hearing. Enter the Meeting ID: 160 248 1883, press # when prompted to enter participant ID. You will be connected into the Court's conference call line. The parties must have full and complete settlement authority to fully discuss and resolve disputed issues at that time. The parties shall be prepared to discuss potential witnesses to be called and the nature of their testimony.

14. Trial.

The matter is set for a **three-day** in-person trial on the Court's trial docket **commencing on Monday, March 22, 2027, at 9:00 a.m.,** in Courtroom E, U.S. Bankruptcy Court,

U.S. Custom House, 721 19th Street, Denver, Colorado 80202. **This is a firm trial date.**

. . . .

IT IS FURTHER ORDERED that the schedule established by this Order may be modified only for good cause and with the Court's consent. Failure to comply with this Order may result in imposition of appropriate sanctions pursuant to Fed. R. Bankr. P. 7016 and 7037 (Fed. R. Civ. P. 16 and 37).

**Except as expressly set forth above, all other portions of the Scheduling Order shall remain in full force and effect.**

**With respect to all the other requests for relief advanced by the Debtor in the Objection to Motion to Withdraw, Second Motion to Withdraw, Motion to Correct, and New Expedited Motion, the Court rejects all such relief as unwarranted and without legal basis.**

## V. Conclusion.

For the reasons set forth above, the Court:

GRANTS the Motion to Withdraw;

MODIFIES the Scheduling Order, but only as set forth above; and

DENIES all other relief requested by the Debtor in the Objection to Motion to Withdraw, Second Objection to Motion to Withdraw, Motion to Correct, and New Expedited Motion.

Dated this 9th day of September, 2026.

BY THE COURT:

Thomas B. McNamara

Thomas B. McNamara,
United States Bankruptcy Judge